## Commonwealth *v.* Mackey, Appellant.

Argued November 9, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John W. Packel*, Assistant Defender, with him *Vincent J. Ziccardi*, Defender, for appellant.

*Judith Dean*, Assistant District Attorney, with her *Milton M. Stein*, Assistant District Attorney, *James D. Crawford*, Deputy District Attorney, *Richard A.*

*Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 20, 1972:

The appellant, Edward Mackey, was tried nonjury in Philadelphia on six separate indictments charging that he committed two separate groups of offenses against the same complainant. In three of the indictments, Mackey was charged with having committed the crimes of sodomy, aggravated robbery and burglary on July 16, 1968. In the three other indictments, he was charged with having committed aggravated robbery, burglary and rape on August 19, 1968.

After trial, Mackey was found guilty by the court of having committed burglary on July 16th, and on this indictment he was sentenced to serve a term of imprisonment of one to five years. Mackey was also found guilty of having committed burglary, robbery and rape on August 19th, and on the rape indictment he was also sentenced to serve a term of imprisonment of one to five years; the sentences to run consecutively.[1] On appeal, the Superior Court affirmed the judgments without opinion. We granted allocatur.

The factual background, as disclosed by the record, is as follows:

About 7 a.m. on July 16, 1968, the complainant, Miss Annette London, was asleep in her bedroom on the second floor of her two-story residence, when she awakened to find a strange male standing beside her bed. The intruder expressed an intent to commit an act of sodomy upon her and then went downstairs to lock the front door. While he was gone, Miss London escaped through a window to the house next door and

---

[1] Judgments were not entered on the August robbery and burglary convictions.

phoned the police. After the police arrived, she returned to her residence and found the intruder had fled after taking about five dollars from her pocketbook. About three hours later, Miss London stopped a police car and advised the officers that the offender was on her street. The police accompanied her to her residence where she identified a man, sitting on the steps, as the guilty party. At the preliminary hearing for this individual, one Lionel Gould, the woman recanted her prior identification and the charges were dismissed.

During the early morning hours of August 19, 1968, a male stranger once again entered Miss London's residence, and forcibly committed an act of sexual intercourse upon her. This incident was not immediately reported to the police.

During the evening about one month after the incident of August 19th, Miss London heard the chain to the front door of her residence jingle. She peered out the front window and saw a man trying to gain entrance. She sent her brother, who was there at the time, to capture the intruder. The brother struggled with the stranger, but did not detain him. About ten days later, acting upon information given to him by the complainant's brother, an officer approached the appellant Mackey and asked him to enter his police automobile. The automobile then proceeded to the front of the residence of the complainant and she was summoned by her brother to the vehicle to view Mackey and "to see if this is the boy who keeps coming in and out of the house." Miss London then said, "Yes, that's him."

The confrontation, above described, while Mackey sat in the police vehicle and Miss London's attention was drawn to his visage by her brother was a suggestive one-on-one identification procedure proscribed by

*Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967 (1967). Mackey was exhibited to the complainant sans counsel and in the most suggestive manner feasible. Also, there were no exigent circumstances to prevent the officer from invoking a formal and proper line-up procedure.

The cases cited by the Commonwealth to sustain the validity of such a confrontation are totally inapposite.

The Commonwealth's brief first directs our attention to "on the scene" identification of which *Commonwealth v. Hall*, 217 Pa. Superior Ct. 218, 269 A. 2d 352 (1970) is illustrative. These cases deal not with an identification occurring over two months after the alleged offense, but rather most specifically with *"fresh on-the-scene confrontations."* The primary reason for the admissibility of such confrontations is that the close proximity in time and place to the actual offense so enhances the reliability as to outweigh the prejudice. "The closer the confrontation to the time of the crime, the greater is the likelihood that the victim or witness can recall the image of the criminal. Similarly, the less the environment of the criminal episode has changed, the fewer the extraneous factors of suggestion that adhere to any confrontation between victim or witness and suspect. . . . 'Though the image of an "unforgettable face" may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time.' " *Hall,* supra, at 226, 227.[2] Clearly the instant facts bear no analogy.

Similarly inapplicable is the rationale of *United States v. Evans*, 438 F. 2d 162 (D.C. Cir. 1971), also

---

[2] The issue of whether appellant was technically under "arrest," or if the police even had probable cause to arrest him at this point is irrelevant to the applicability of *Stovall.* See *United States v. Cox*, 428 F. 2d 683 (7th Cir. 1970).

heavily relied upon by the Commonwealth. There the victim herself espied the accused on the street and telephoned the police. In the case at bar, the brother, neither an eyewitness nor a testifying witness, was the individual who selected the accused and directed the victim's attention to him under circumstances not free from suggestion. This difference between the two situations is most crucial.

The question then arises, what effect does the illegal confrontation have on the validity of the convictions here under appeal? We conclude it necessitates a reversal of the judgment and conviction for the July burglary, but does not warrant disturbing the conviction and judgment for the rape committed in August.

Our reasons for this conclusion follow.

Granting the illegality of the confrontation involved, Miss London's in-court identification testimony of Mackey was not constitutionally precluded as trial evidence if the Commonwealth established this identification was free from taint of the initial illegality. *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967), and *Commonwealth v. Rankin*, 441 Pa. 401, 272 A. 2d 886 (1971). In our view, the Commonwealth met this burden as to the rape committed in August.

An examination of the record discloses that Miss London's in-court identification of Mackey as her attacker in August had sufficient independent basis to be purged of any taint. Her testimony as to the occurrence in August reveals a certainty of response and the existence of a greater opportunity and will to observe her assailant. She observed the intruder on this occasion at close range for several minutes in the sunlight. She never waivered in her identification of Mackey as her assailant on this occasion. We, therefore, rule that Miss London's in-court identification of Mackey as her rapist on August 19th was not the product of the il-

legal confrontation and was sufficient to establish Mackey's guilt of the rape charged on this occasion.

As to Miss London's in-court identification of Mackey as the burglar on July 16th, the record is totally different. As to this incident, her testimony discloses she just awakened from sleep, which could tend to reduce her visual senses; that she was too frightened to look at the intruder's face; and that within hours after the occurrence when her memory would presumably have been more reliable, she identified an individual other than Mackey as the burglar. More importantly, her court testimony identifying Mackey as the July burglar is patent with confusion and unreliability. In part, it was as follows: "A. I was in the bed. So when I woke up, this boy, I thought, was standing over top of me. I thought it was him. Q. This boy? A. Yes. Q. Point him out. You mean the defendant? A. It wasn't him. Q. You are absolutely sure of that? A. It wasn't him the first time, no—it was him evidently, but I picked out the wrong person, see because I was so afraid. *I wasn't noticing him too much at that time.*" (Emphasis added) . . . . Q. Was that the same man who was there standing by your bed on July 16, 1968? A. I wasn't sure that first time because I made a mistake the first time, but the second time I had to know who he was. Q. Was he the same man who was standing by your bed on July 16th? A. *I can't say very well.*" (Emphasis added.)

Under the circumstances, the conclusion is inescapable that Miss London's in-court identification of Mackey as the July intruder stemmed from and was the product of the illegal confrontation, before described, and as such should have been rejected. Without this testimony, the evidence is insufficient as a matter of law to sustain the July burglary conviction.

One final assignment of error indicates discussion.

On direct examination Mackey was asked what had transpired between himself and prosecutrix when the latter first identified him as her attacker. Mackey replied that, "I told her I didn't know what she was talking about."

On cross-examination the district attorney, questioning only on those areas testified to by Mackey on direct, asked him if the following were not true: "And you did not say anything to the prosecuting witness when she pointed at you, is that correct?" Mackey replied, "No, I did not." An objection was then made by trial counsel and overruled by the trial court.

It is claimed this ruling was prejudicial error since it permitted in evidence what amounted to a tacit admission, contrary to the teaching of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). However, the challenged inquiry was within the area testified to by Mackey on direct examination, hence it was not error to permit it. While such evidence may not have been admissible as part of the Commonwealth's case in chief, it was rendered admissible by Mackey's testimony on direct examination.

The order of the Superior Court affirming the judgment entered by the trial court on indictment No. 512 (July burglary) is reversed.

The order of the Superior Court affirming the judgment entered by the trial court on indictment No. 515 (August rape) is affirmed.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.