## Commonwealth *v.* Santiago, Appellant.

Submitted March 18, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John W. Packel,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*David Richman,* Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., June 21, 1974:

The appellant, Wilfredo Santiago, was convicted of robbery following a trial without a jury on November

1, 1972. Motions to suppress the identifications made by the complainant and an eyewitness were denied before trial. Post-trial motions for new trial were denied, and appellant was sentenced on December 19, 1972, to serve not less than one year nor more than three years imprisonment.

The issues before us on this appeal concern an on-the-scene confrontation between appellant and the complainant, and a confrontation in the police station between the appellant and an eyewitness. The appellant alleges that both of the identifications which resulted from these confrontations were obtained by improperly suggestive methods, that the latter violated appellant's right to counsel, and that both should have been suppressed at trial.

Viewing the evidence in the light most favorable to the Commonwealth, as we must, *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A. 2d 195 (1970) the testimony establishes the following situation. At 9:05 p.m. on July 1, 1972, Officers Roantree and Ford of the Philadelphia Police Department received a radio call from headquarters concerning a purse snatching at Twentieth and Nectarine Streets. The description given was that of a black male, twenty-five years old, wearing a white "T" shirt, dark pants, and a large Afro-bush haircut. The officers saw an individual who fit this description running through the Linton Restaurant parking lot, approximately two blocks from the scene of the crime. Officer Roantree followed the appellant into Linton's and at 9:10 p.m. put him under arrest, and patted him down.[1] The appellant was immediately placed in the patrol wagon, and driven one block, to Seventeenth and Spring Garden Streets, where the complainant was waiting with an Officer McCann, in another patrol car.

---

[1] The appellant was not carrying a purse of any kind, according to Officer Roantree. (NT 16)

Officer Roantree testified (NT 7) that Officer Ford parked their car behind Officer McCann's, and both police officers got out of the wagon and let the appellant out of the back. All three then approached the complainant. As soon as the complainant saw appellant, she positively identified him as the robber. The appellant was not wearing handcuffs.

Appellant was then taken to the Detectives' Office in the Ninth Police District. In order to reach the Detectives' Office, which is on the second floor, the appellant had to be taken through a waiting room on the first floor. Officer Roantree testified (NT 20-23) that he personally conducted the appellant to the Detectives' Office, that he noticed a man in the waiting room watching their progress, but that he did not know at the time that that man was an eyewitness to the purse-snatching.[2] The eyewitness, Mr. Taiwan, after having seen appellant in the waiting room, told a policeman that appellant was the robber.

The appellant was placed in a detention room and handcuffed to a chair. The complainant entered, and again positively identified appellant as the robber.

It is now alleged that the identifications made by the complainant at the scene, and by the eyewitness at the police station were the results of unduly suggestive circumstances, and that the refusal of the lower court

---

[2] "Q. Did you know when you first brought Mr. Santiago into the station that this man was a witness to this particular case? A. No, I didn't. Q. Where did this chance meeting occur? A. It is outside of the operations room. There is a room there approximately the size of the section of chairs there. It is not that large an area. It is a fairly sizeable room. You just use it to travel back and forth. Q. Did you take him into the operations room at that time? A. No. Right up to the detective division. Q. So that you passed by the man and later you found out that man to be a witness: is that correct? A. Yes. We just came in the door and turned to our left. We then went upstairs. He was in the far side of the room." (NT 21)

to suppress them was reversible error. We do not agree, and will therefore affirm the sentence of the court below.

A fresh, on-the-scene confrontation is admissible evidence. As the Supreme Court stated in *Commonwealth v. Mackey,* 447 Pa. 32, 36, 288 A. 2d 778, 780 (1972): ". . . The primary reason for the admissibility of such confrontations is that the close proximity in time and place to the actual offense so enhances the reliability as to outweigh the prejudice. 'The closer the confrontation to the time of the crime, the greater is the likelihood that the victim or witness can recall the image of the criminal. Similarly, the less the environment of the criminal episode has changed, the fewer the extraneous factors of suggestion that adhere to any confrontation between victim or witness and suspect. . . .' Commonwealth v. Hall, 217 Pa. Superior Ct. 218, 226-27, 269 A. 2d 352, 356 (1970)."

In *Commonwealth v. Turner,* 454 Pa. 520, 523, 314 A. 2d 496, 498 (1974), on confrontation facts similar to those at bar, the Court noted: "The Russell court, [*Russell v. U.S.,* 408 F. 2d 1280 (D.C. Cir. 1969)] which fully discussed the opposing policy arguments, recognized the high degree of suggestiveness in confrontations where a single suspect is viewed in the custody of the police. However it decided that the reliability inhering in an immediate identification and the rapid release of a mistaken suspect outweighed the prejudice. We believe that the close proximity in time and place does greatly reduce the chance of misidentification and we agree that mistaken suspects ought not suffer the hardship and embarrassment inuring to protracted police custody. Furthermore, should the prompt on-the-scene confrontation fail to render a positive identification, the police may quickly resume their search for the guilty party."

The federal courts have recognized that absent some special element of unfairness, a prompt, on-the-scene confrontation is not so affected by suggestiveness as to give rise to an irreparable likelihood of misidentification, and does not violate due process. See, *United States ex rel. Gomes v. New Jersey,* 464 F. 2d 686 (3d Cir. 1972); *United States v. Gaines,* 450 F. 2d 186 (3d Cir. 1971), *cert. denied,* 405 U.S. 927 (1972); *United States v. Poe,* 462 F. 2d 195 (5th Cir. 1972).

We find nothing in the case at bar to indicate a special element of unfairness. Appellant was apprehended near the scene of the robbery by a police officer responding to a police report of the crime. He was driven one block, where he was viewed by the complainant who had seen the robber only ten minutes before and who made a positive identification without suggestive questioning by the police. Only 10-15 minutes had elapsed between the crime and the identification. "Such a prompt identification of a freshly-caught suspect in the immediate vicinity of the crime does not amount to a denial of due process rights." 454 Pa. at 525, 314 A. 2d at 499. The court below properly admitted this identification.

The police station identification by the eyewitness was also admissible. The eyewitness, without any prompting by the police, identified the appellant as he entered the police station. This meeting was accidental, and neither appellant nor the arresting officer recognized Mr. Taiwan as a witness, nor could they have known he was in the waiting room. The fact that the appellant was led into the station in handcuffs was not unduly suggestive, but rather was normal police procedure.

The United States Supreme Court has held that the *Wade*[3]-*Gilbert*[4] exclusionary rule does not apply to pre-

---

[3] *United States v. Wade,* 388 U.S. 218 (1967).

[4] *Gilbert v. California,* 388 U.S. 263 (1967).

indictment confrontations based upon "a police station showup that took place *before* the defendant had been indicted or otherwise formally charged with any criminal offense." *Kirby v. Illinois,* 406 U.S. 682, 684 (1972).

Under the circumstances of this case, appellant's Sixth Amendment right to counsel was not infringed.

The judgment of sentence is affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.