386 A.2d 1006

COMMONWEALTH of Pennsylvania

v.

**Lucius J. AARON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided April 28, 1978.

Hugh C. Clark, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Appellant was tried before a judge and jury on December 13 through December 19, 1974, and convicted of robbery,[1] aggravated assault,[2] simple assault,[3] possessing instruments of crime[4] and possessing a prohibited offensive weapon.[5]   A sentence of ten to twenty years imprisonment was imposed

1.  18 Pa.C.S. § 3701.

2.  18 Pa.C.S. § 2702.

3.  18 Pa.C.S. § 2701.

4.  18 Pa.C.S. § 907.

5.  18 Pa.C.S. § 908.

on the robbery conviction and a concurrent term of two to four years was imposed on the weapons offenses. Sentences on the other convictions were suspended. This case is before us on direct appeal. We affirm the judgment of sentence.

On September 2, 1974, Maureen Stewart and Theresa Liberi left the Theater of Living Arts, near Fourth and South Streets in Philadelphia, about 11:00 p.m. They walked approximately a block, to Fourth and Lombard Streets, to wait for a bus. While the two were waiting, a man approached them and and asked when the bus was due. Not long thereafter, the man asked Miss Stewart for a match, which she replied she did not have. After some further remarks were exchanged, as Miss Stewart turned to resume conversation with her companion, she was stabbed in the back. Although Miss Stewart was unable, due to her position, to observe her assailant, Miss Liberi saw the man stab her friend. Miss Stewart cried out that she had been stabbed and began to scream for assistance. Miss Liberi tried to ward off the attacker with her hands, but was cut on one hand and stabbed in the side.

Miss Stewart fled across the street but the man pursued her, still brandishing the weapon, and pinned her against a car. At this point, seeing her assailant preparing to strike another blow, Miss Stewart took off her shoulder bag and threw it to him, telling him to take it, "that it had a lot of money." (NT 110). The man replied, "Give it to me, bitch" (NT 110), and took the purse. Both women fled, and were soon aided by people from the neighborhood, who called the police and took the victims to the hospital. A police team which examined the scene of the crime found blood on the street, blood on the car against which Miss Stewart had been pinned, and a blood-stained knife.

Shortly after Misses Stewart and Liberi arrived at nearby Pennsylvania Hospital for treatment, the police began to bring in suspects for possible identification. The women, who were separated, were each shown three individuals, one at a time. Both women positively identified the third suspect as the man who had assaulted and robbed them.

Appellant's opening assignment of error is the lower court's refusal to suppress the identifications made by the victims in the hospital. The first basis for suppression asserted is that this confrontation was in violation of appellant's right to counsel under the decisional law of this state.[6] In *Commonwealth v. Richman*, 458 Pa. 167, 171, 320 A.2d 351, 353 (1974), our supreme court stated that "*Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738 (1970), appropriately draws the line for determining the initiation of judicial proceedings in Pennsylvania at the arrest." Correspondingly, the court held that in Pennsylvania the right to counsel at a lineup attaches at the same juncture. There is, however, a significant difference between the institutional lineup situation in *Commonwealth v. Richman, supra,* and the facts of the instant case.

Officer Iacuzio of the Philadelphia Police testified that he and his partner, Officer Dizio, arrested appellant at approximately 12:25 a.m. on September 3, 1974, in the Clam Bar on the corner of Passyunk and Fitzwater Streets in Philadelphia. (NT 171). The circumstances were as follows. As Officer Iacuzio entered the establishment, he saw appellant sitting at the bar having a drink. His attention was attracted by appellant's clothing, which included a multicolored shirt and a tan jeff cap. Similar items of apparel had been mentioned in a police radio broadcast describing a man involved in a purse snatching in the vicinity of Fourth and Lombard Streets earlier in the evening. Officer Iacuzio returned to the police vehicle, parked near the door of the bar, to check the description over the radio. Having confirmed his recollection, he reentered. Appellant arose and moved to the back of the bar, in the direction of the men's

6. The pre-trial identifications in this case did not violate appellant's right to counsel under the Sixth Amendment and *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court held that the right to counsel at a pre-trial confrontation does not attach until "after the initiation of adversary judicial proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." 406 U.S. at 689, 92 S.Ct. at 1882.

room. Officer Dizio went around to the bar's other entrance. After checking the men's room and finding appellant not to be inside, Officer Iacuzio turned to his left and saw appellant emerging from steps which led down to the basement. Appellant was wearing only a black, perforated T-shirt on his upper body. Officer Iacuzio asked what he had done with the other clothing, and appellant denied he had been wearing anything else. After placing appellant under arrest, Officer Iacuzio descended to the basement, where he found the hat and shirt appellant had previously worn. The officers immediately transported appellant to Pennsylvania Hospital for possible identification.

Although Officer Iacuzio told appellant that he was under arrest, this fact alone does not require suppression of the hospital identifications. It is apparent, with or without the officer's testimony, that appellant had been subjected to "arrest" in the broadest sense of that term, see *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969), when the police escorted him from the Clam Bar. However, for several reasons, we find that appellant's right to post-arrest counsel under *Commonwealth v. Richman, supra,* was not violated.

First, we find this case to be, in its salient factors, similar to *Commonwealth v. Ray*, 455 Pa. 43, 315 A.2d 634 (1974), and controlled by the holding in that opinion rather than by the rule in *Richman*. In *Ray*, a gunman attempted an early morning robbery of a motel office. The night clerk took advantage of an opportunity to call for help and the intruder fled. Pursuing, the clerk saw the man enter the passenger side of an automobile parked approximately 150 feet down the highway and drive away. The clerk contacted the police and gave a description of the robber and the car. Not long thereafter, an automobile meeting the description was stopped nearby for speeding. A passenger in the vehicle appeared to meet the depiction of the would-be bandit, so the police contacted the motel clerk to see if he could identify the suspect. The clerk accompanied a police officer to a parking lot where the car and its passengers had been

detained and identified Ray, who was still seated in the auto. The identification took place approximately fifty minutes after the attempted robbery.

There are several clear parallels between the facts in *Ray* and the circumstances presented in the instant case. The victims in both cases had excellent opportunities to view their assailants. In each case the suspect was identified within a relatively short time following the crime. In both cases the men were detained following apprehension, and subjected to a prompt identification procedure prior to any further police action. The court in *Ray* states that "[h]e had not been arraigned or otherwise charged with any crime, nor had any other formal criminal proceedings been brought against him. Indeed, he had not even been formally arrested . . . ." *Commonwealth v. Ray, supra,* 455 Pa. at 49, 315 A.2d at 636. The events prior to and including the identification are characterized as "the preliminary phase of the investigation." *Commonwealth v. Ray, supra,* 455 Pa. at 51 n. 8, 315 A.2d at 637 n. 8. Although the court in *Ray* describes the suspect as being "detained" pending the identification, it is clear that Ray was no less subject to police custody and control than appellant. Further, it is reasonable to assume that had the victims in this case found that appellant was not the man who had attacked them, appellant would have been released and the search would have been resumed. To distinguish this case from *Ray* solely on the fact that appellant was told he was under arrest, when it is clear that the suspects in both cases were similarly deprived of their ability to refuse cooperation and both were thus includable within the broad definition of arrest, would be artificial and logically insupportable.

Another important similarity between *Ray* and the case before us is that neither victim-suspect confrontation took place at the actual scene of the crime. Ray was identified as he sat in the car, not standing in the motel office. Appellant herein was identified in a hospital rather than on the street. We discern nothing so specially prejudicial in the hospital environment as to take this case outside the holding in *Ray*.

Appellant also contends that *Commonwealth v. Hall,* 217 Pa.Super. 218, 269 A.2d 352 (1970), establishes his right to counsel at the pre-trial identifications and consequently compels their suppression. *Hall* involved a confrontation between the victim and several suspects which took place in the hospital within a relatively short time following the crime. The court held this confrontation to be improper, reasoning that since the complainant had not suffered serious injury the police could have taken time to arrange a formal, counselled lineup at the hospital or could have brought the victim to the police station for a formal, counselled lineup. In *Commonwealth v. Ray, supra,* however, our supreme court overruled *Hall* to whatever extent it was inconsistent with that decision. The instant case is governed by *Ray* rather than the disapproved analysis in *Hall.*

*Commonwealth v. Ray, supra,* and the instant case are definitely distinguishable from *Commonwealth v. Richman, supra,* the decision which delineated the right to counsel at a post-arrest lineup. The appellant in *Richman* was arrested five days after the offense of which he was accused and was incarcerated for several hours prior to being placed in a lineup. The suspect in *Ray* and appellant herein were both apprehended shortly after the respective crimes occurred and were both promptly identified, prior to being taken to a police station or incarcerated. The foundation of the right to counsel in *Richman* is evident. The defendant was incarcerated and should have been readily available for consultation with his attorney. Further, a police station or jailhouse setting presents a much greater potential for prejudicial confrontations. However, *Commonwealth v. Ray, supra,* and the case before us involve "pre-incarceration"[7]

7. Ascertaining an appropriate term to describe the identification procedure in this case presents an intriguing problem in legal nomenclature. As the confrontation did not take place at the site or in the immediate vicinity of the crime, the term "on the scene" is clearly inappropriate, although, as stated in text *infra*, the instant identifications possess indicia of reliability strongly similar to identifications generally grouped under that rubric. The term "pre-incarceration identification" has been introduced herein to signify a confrontation which has occurred soon after the criminal event and, although after

identifications, in which the paramount consideration is the length of time between the criminal act and the confrontation. To require the presence of counsel in such situations would at least seriously impair and could possibly destroy the effectiveness of an important law enforcement procedure.

Looking beyond the controlling influence of *Ray*, it is certain that our supreme court did not intend, by its holding in *Richman*, to disallow "on the scene" identifications, long recognized as a viable procedure in law enforcement. Although the confrontation in the instant case did not occur at the scene of the crime, it contained the most important elements of a classic "on the scene" identification, and it was certainly far removed from a formal, custodial lineup, the situation addressed by the court in *Richman*.

In *Commonwealth v. Santiago*, 229 Pa.Super. 74, 78, 323 A.2d 826, 828 (1974), we stated that:

"A fresh, on-the-scene confrontation is admissible evidence. As the Supreme Court stated in *Commonwealth v. Mackey*, 447 Pa. 32, 36, 288 A.2d 778, 780 (1972): '. . . The primary reason for the admissibility of such confrontations is that the close proximity in time and place to the actual offense so enhances the reliability as to outweigh the prejudice.' "

Our supreme court, confronting the same issue in *Commonwealth v. Turner*, 454 Pa. 520, 523, 314 A.2d 496, 498 (1974), observed that:

"The *Russell* court [*Russell v. U. S.*, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969)], which fully discussed the opposing policy arguments, recognized the high degree of suggestiveness in confrontations where a single suspect is viewed in the custody of the police. However it decided that the reliability inhering in an immediate identification and the rapid release of a mistaken suspect outweighed the prejudice. We believe that the close proximity in time and place does greatly reduce the chance of misidentification

the suspect's arrest, prior to his introduction into a formal custodial environment.

and we agree that mistaken suspects ought not suffer the hardship and embarrassment inuring to protracted police custody. Furthermore, should the prompt on-the-scene confrontation fail to render a positive identification, the police may quickly resume their search for the guilty party."

It is evident that the most important element in pre-incarceration identifications is the length of time intervening between the crime and the confrontation. *See United States v. Savage,* 470 F.2d 948 (3d Cir. 1972), *cert. denied,* 412 U.S. 930, 93 S.Ct. 2759, 37 L.Ed.2d 158 (1973) (confrontation within one-half hour after robbery); *Commonwealth v. Ray, supra* (confrontation within approximately fifty minutes). In this case, although the exact time interval is not clear from the record, it appears that appellant was identified by the victims within one and a half hours following the crime (NTS 12–15, 40, 43, NT 138). The proximity in time between the act and the identifications weighs heavily in favor of their probative value. Thus although the term "on the scene" is nominally inapposite to the confrontations herein, the analysis which establishes the admissibility of the former category of identifications applies convincingly to the latter.

Appellant's second line of attack on the pre-trial identifications is on the ground of suggestiveness. It is argued that because one-to-one confrontations or "identification parades" such as the one involved in this case are inherently prejudicial, the hospital identifications herein could only be justified if the victim were in extremis, which they were not.[8] However, the foregoing discussion of *Commonwealth v. Ray, supra,* has illustrated that a one-to-one confrontation occurring shortly after the crime but away from the scene can produce a legally viable identification.

8. The stab wound in Miss Stewart's back was found to be superficial, and although Miss Liberi suffered a collapsed lung and spent ten days in the hospital, she was apparently never in danger of death from her injuries. Nothing in the record, however, suggests that the police were aware of the medical status of the victims prior to encountering them in the hospital.

Although factors such as variances in lighting, the physical and mental condition of the victim or witness and police conduct in presenting the suspect should always be considered in determining the admissibility of an identification, there is no reason to presume that a hospital environment is so inherently conducive to misidentification that, absent counsel and a formal lineup, suppression is required.

Appellant alleges two particular elements of undue suggestiveness. It is asserted that the first two suspects shown to the victims were so unlike their earlier description of the assailant as to prejudicially highlight the correspondence between that description and appellant. The record indicates that one suspect was considerably older and the other somewhat taller than appellant. This was not, however, a formal lineup at a police station. The suspects were presented separately and at intervals of at least a few minutes. There is nothing to suggest that the police sought to influence the identification procedure in any manner.

Another claim of prejudice in regard to the hospital identifications is that one of the police officers who brought appellant before Miss Stewart held in his hand the shirt and cap which appellant had been wearing when the officers first observed him in the Clam Bar. Miss Stewart noted the clothing at that time. (NT 234). There is no indication, however, that her identification of appellant was influenced by the hat and cap. On the contrary, testimony of both witnesses indicates that their identifications were based on recognition of appellant's face. (NTS 27, 44). Both Miss Stewart and Miss Liberi had an excellent opportunity to observe appellant prior to the incident. The police officers made no attempt to influence the victims in regard to any individual, instructing them only to be certain before identifying a suspect. (NTS 28). The identifications by both women were immediate, positive, and unshaken. Although the environment and procedure were not ideal, neither were "the circumstances of the pre-trial confrontation . . . so infected by suggestiveness as to give rise to an irreparable likelihood of misidentification, *Stov[a]ll v. Denno*, 388

U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)." *Common-wealth v. Turner, supra,* 454 Pa. at 523, 314 A.2d at 498. There was thus no error in the lower courts' refusal to suppress the hospital identifications.

▋ The final contention advanced by appellant is that he was improperly convicted of robbery because there was no evidence that the victims were injured in the course of a theft.[9] This assertion is apparently based on the fact that appellant attacked the women prior to attempting to deprive either of them of any property. However, appellant's menacing pursuit of Miss Stewart following his initial attack and his subsequent taking of her purse illustrate a clear nexus between the threat or infliction of serious bodily injury and theft. This argument is thus without merit.

The judgment of sentence of the lower court is affirmed.

SPAETH, J., files a concurring opinion.

HOFFMAN, J., files a dissenting opinion.

WATKINS, former President Judge, did not participate in the consideration or decision in this case.

SPAETH, Judge, concurring:

*Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974), established the general rule that in Pennsylvania an accused is entitled to counsel at any lineup or showup conducted after his arrest. In establishing this rule, however, the Court specifically noted that an exception to the rule was that an accused is not entitled to counsel at

---

**9.** The definition of robbery applicable to this case is found in 18 Pa.C.S. § 3701 which provided, prior to its amendment, as follows:
"(1) A person is guilty of robbery if, in the course of committing a theft, he:
(i) inflicts serious bodily injury upon another;
(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
(iii) commits or threatens immediately to commit any felony of the first or second degree.
(2) An act shall be deemed in the course of committing a theft if it occurs in an attempt to commit theft or in flight after the attempt or commission."

"prompt on-the-scene identifications." *See in particular* footnote 5 of the majority opinion, 458 Pa. at 174, 320 A.2d at 354, *and also* footnote 8 of Mr. Justice (now Mr. Chief Justice) EAGEN's concurring opinion in which Mr. Chief Justice JONES joined, 458 Pa. at 182, 320 A.2d at 366. The problem presented by the case at hand is that the Court has not defined the dimensions of this exception.

One way to define those dimensions is to adopt a formula stated in such a way as to permit of mechanical application, in the hope that thereby uncertainty may be avoided. That, it seems to me, is what Judge HOFFMAN does in his dissent, when he says, quoting *Commonwealth v. Hall*, 217 Pa.Super. 218, 228, 269 A.2d 352, 358 (1970), that the exception does not apply "when the scene changes or the time becomes late." At 1014. Another formula, very different from Judge HOFFMAN's, is that adopted by the United States Supreme Court in *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). There the Court focused its attention not on the relationship between the lineup and showup and the crime but on the criminal process, holding that the right to counsel did not attach unless the lineup or showup occurred after the arraignment. The result of adopting this formula was to define away the problem that we are struggling with here: under *Kirby*, so long as the lineup or showup is before the arraignment the accused is not entitled to counsel; it is immaterial, as regards the right to counsel, whether the lineup or showup is prompt or late, at the scene or in the station house. *See* N. Sobel, *Eye-Witness Identification* § 19 (1972).

It seems to me that we should avoid any mechanical formula; either it will not in fact achieve the desired certainty (when does "the time become[ ] late"?), or (as *Kirby* does, in my opinion) it will so undercut the right to counsel that "[t]he suggestive showup will again become commonplace," Sobel, *supra*, § 17 at 34. A better approach is to try to define the dimensions of the on-the-scene exception in terms of the conflicting considerations at issue.

This was attempted in *Russell v. United States*, 133 U.S. App.D.C. 77, 408 F.2d 1280 (1969). That was a pre-*Kirby* case, and the Court of Appeals decided it on the assumption that by virtue of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the general rule was that an accused was entitled to counsel at a lineup or showup. Proceeding from this assumption, the court then considered whether there was an exception for the on-the-scene identification, and decided that there was. In defining this exception, the court described the conflicting considerations at issue as follows:

> Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain. Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty. There may also be unconscious or overt pressures on the witness to cooperate with the police by confirming their suspicions. And the viewer may have been emotionally unsettled by the experience of the fresh offense.

> Yet, on the other hand, recognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his "mind's eye" a face or a figure which he is hard put to describe adequately in words. Though the image of an "unforgettable face" may occasionally linger without any translation into words, photographic recall is most often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized features, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man.

Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will "if anything promote fairness, by assuring reliability * *." This probability, together with the desirability of expeditious release of innocent suspects, presents "substantial countervailing policy considerations" which we are reluctant to assume the Supreme Court would reject. We therefore conclude, with some hesitation, that *Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 does not require exclusion of McCann's identification.

133 U.S.App.D.C. at 81, 408 F.2d at 1284 (footnote omitted).

A similar statement appears in Part IC, Section 160.2(a), of the American Law Institute's Model Code of Pre-Arraignment Procedure (adopted 1975), where it is said that as a general rule a lineup ("an array of several persons . .") must be held "except . . . in any of the following circumstances":

(a) *Confrontation promptly after commission of a crime.* A law enforcement officer arranges a confrontation by a witness to a crime promptly following the commission of that crime, unless there is reason to believe that a line-up or other procedure is necessary to make the identification reliable.

In the Note to this section the following is said:

Paragraph (a) authorizes the so-called alley-way confrontation even in cases where a more formal identification procedure would be practicable. A number of decisions and writers have offered the judgment that such prompt confrontation, even without the benefit of an array of persons from whom an identification is to be made, is particularly desirable since the witness' recollection will be fresh. Moreover, it must be recognized that in many situations the prompt confrontation with a witness or victim will either be hard to avoid in the nature of the circumstances or will appear the entirely natural way of proceeding to all concerned. Such confrontations have the

further advantage that if the police have the wrong man he may be released forthwith without even the necessity of a formal arrest or booking at the police station. There may, however, be circumstances in which such a confrontation will not be particularly reliable, as where the witness may not have had a good look at the suspect or exhibits such confusion that there is reason to believe that whoever is presented to the witness first will be the person upon whom the witness fastens an identification. In those cases a line-up or other more formal procedure must be held.

I should like to see us adopt the approach reflected in *Russell v. United States, supra,* and the Model Code of Pre-Arraignment Procedure. Doing so here, I conclude that the show-up was within the prompt on-the-scene exception. True, it was not literally on the scene, and neither was it prompt in the sense of being immediately after the crime; also true, a formal lineup could have been held. Nevertheless, it was not long after the crime, the witnesses' recollection was fresh, and the circumstances of the crime and the descriptions given by the witnesses made it reasonable to suppose that a showup in the hospital would result in a reliable identification.

I therefore agree that the judgment of sentence should be affirmed.

HOFFMAN, Judge, dissenting:

Appellant contends that the lower court erred in denying his motion to suppress an out-of-court identification. I agree and, therefore, dissent.

Appellant argues that he was denied his right to counsel at a one-on-one, post-arrest show-up at a hospital. *U. S. v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) establish that after the initiation of the adversarial process against a defendant, he is entitled to have counsel present at a lineup or showup. In *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974), our Supreme Court

held that in Pennsylvania the initiation of judicial proceedings begins with arrest because the policy behind *Wade* applies to all confrontations conducted after arrest. The Supreme Court did note that an exception to this requirement occurs in the case of a prompt, on-the-scene identification. Subsequent Pennsylvania cases have approved the exception for two reasons. First, if the on-the-scene confrontation fails to result in an identification, the person is free again and the police may quickly resume their search. Second, there is a high degree of reliability in identifications made close in time and place to the crime. *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1970); *Commonwealth v. Jenkins*, 232 Pa.Super. 523, 335 A.2d 463 (1975); *Commonwealth v. Santiago*, 229 Pa.Super. 74, 323 A.2d 826 (1974).

In the instant case, the denial of counsel at the identification cannot be upheld under either rationale. Preliminarily, it is apparent that the identification took place one and one half hours after the incident; and it did not occur at the scene but at a hospital. As stated in *Commonwealth v. Hall*, 217 Pa.Super. 218, 228, 269 A.2d 352, 358 (1970):

"While on-the-scene confrontations may well be permissible without the benefit of counsel, when the scene changes or when the time becomes late, our view must be governed by *Wade*. When an identification takes place at a hospital, the victim no longer has the scene clearly in view. The background has changed, the lighting is different, the suspect against the bland walls is more vivid. The fact that the police have thought enough of the suspect to take him to the hospital bears on the victim's mind. In short, the possibility of both suggestion and misidentification increase perceptibly. Where the victim is not in extremis, there is no reason not to wait until a formal line-up with counsel can be arranged at the hospital or, as in this case, until the victim can be brought to the police station where a formal line-up with counsel can be held."

In the instant case, the Commonwealth does not argue nor is there any evidence, that the victims were in extremis or even in critical condition so as to require an immediate

identification. I believe that the identification in the instant case was not a prompt, on-the-scene identification so as to fall within an exception to *Richman*, nor was it justified as an emergency.

Additionally, the police arrested appellant prior to conducting the identification. By arresting appellant the police indicated that they had probable cause independent of any subsequent identification. Therefore, they had no need to take him to the hospital and subject him to such an inherently prejudicial confrontation.

I conclude that because of the delay and the change of scene from the street to the hospital, appellant had the right to a counselled line-up. Therefore, I dissent.[1]

---

1. The lower court did not confront the issue of whether evidence of the out of court identification although unconstitutionally obtained, could still be admitted at trial due to its inherent reliability. See: *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Without an evidentiary hearing on this issue, I would not address it.