412 A.2d 601

**COMMONWEALTH of Pennsylvania**

v.

**Richard WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 26, 1978.

Filed Oct. 17, 1979.

Louis R. Dadowski, Assistant Public Defender, Appeals Division, Pittsburgh, for appellant.

Charles W. Johns, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, WIEAND and HOFFMAN, JJ.

CERCONE, President Judge:

Appellant, Richard Williams, was convicted of robbery,[1] two counts of aggravated assault,[2] and criminal conspiracy,[3] at a jury trial in Allegheny County. Post-trial motions were denied. Appellant was sentenced to an aggregate of eleven to forty-two years imprisonment. Based on the arguments preserved for our review, we affirm the judgment of sentence.

At approximately 11:00 P.M. on November 1, 1976, three black males arrived at the home of Mae Gamble, age 91, and her nephew, George Miller, age 65. The visitors inquired about renting rooms; Mr. Miller informed them there were none. One of the three males then shoved Mr. Miller across the room into a chair, and hit him across the face with a cue stick which knocked Mr. Miller's glasses off. The two other men entered the home and ransacked it. In the process, one of the men assaulted Mrs. Gamble by repeatedly striking her with her own cane. Mrs. Gamble was also threatened with a butcher knife one of the men took from her kitchen.[4] The victims testified that the men took approximately $1,200, a gold watch, three rings, earrings, Mr. Miller's wallet, checkbook, and a portable radio. Mr. Miller testified the men were in the home for approximately thirty minutes, during which time he was able to view the men several times at a distance as close as two to three feet.

A neighbor saw the men leave the Gamble home and drive away in a white convertible having a license number beginning with "51," and having a "9" as one of the remaining numbers. The witness telephoned police with this information and a description of the men similar to the one Mr. Miller gave.

1. Crimes Code, 18 Pa.C.S. § 3701 (1973).

2. Crimes Code, 18 Pa.C.S. § 2702 (1973).

3. Crimes Code, 18 Pa.C.S. § 903 (1973).

4. It was stipulated that appellant was not the man who administered any of these assaults.

Based on this information, the police apprehended appellant, Frank Johnson and Lamont Harris, in a white convertible about three blocks from the Gamble home at approximately 12:15 A.M. Their search of the car revealed a portable radio, a paper bag full of money, a cue stick, and several rings that coincided with what had been taken during the crime.

Other police officers had taken Mr. Miller to a nearby hospital where he received five stitches for the face wound he sustained. Within an hour of the crime, the three suspects were taken to the hospital for identification by Mr. Miller. The victim identified the men as a group as they stood outside beside the police van, saying they were the ones who had robbed and assaulted him. Later at the preliminary hearing, Mr. Miller identified three men. Motions to suppress these identifications were denied and appellant was convicted at a jury trial. Post-trial motions were denied and this appeal followed.

Appellant raises three issues for our review: first, whether the in-court identification by Mr. Miller should have been suppressed as being tainted by the prior suggestive hospital identification; second, whether there was sufficient evidence to prove appellant's identity; and third, whether appellant's trial counsel was ineffective for failing to subpoena a witness to testify at trial.

I.

Appellant's first argument is that the hospital identification was an unduly suggestive one-on-one confrontation that was not necessary since Mr. Miller was not *in extremis.* *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Appellant contends this confrontation subsequently tainted the in-court identification by Mr. Miller which should not have been admitted.[5] *Commonwealth v. Hall*, 217 Pa.Super. 218, 269 A.2d 352 (1970).

---

5. Mr. Miller identified appellant at the preliminary hearing and again at trial. Since trial counsel only objected to the identification at the

■ We note first that "[a]ll confrontations between victim or witness and the suspect are potentially suggestive." *Id.*, 217 Pa.Super. at 225, 269 A.2d at 356. However, our review of the evidence in this case shows that the victim's hospital confrontation with appellant was not impermissibly suggestive. Mr. Miller had the opportunity to view appellant for a period of 30 minutes while appellant occupied his home. Although it is true Mr. Miller's glasses were knocked off, he testified that only one of his eyes had poor sight and he had viewed appellant within a distance of two to three feet. The time span between the crime and the identification was short and Mr. Miller was very certain of his identification at the hospital. These factors show that the identification takes on the characteristics of an "on the scene" identification which is admissible due to its inherent reliability. In *Commonwealth v. Aaron*, 255 Pa.Super. 289, 386 A.2d 1006 (1978), we upheld the admissibility of a hospital confrontation which occurred within one and one-half hours of the crime in which the victims had been robbed and stabbed. We held this "on the scene" type of promptness outweighed any prejudice to defendants. Although Mr. Miller's injury in the instant case was not considered potentially fatal, it was serious enough to warrant immediate hospital attention which necessitated bringing appellant to the hospital for an "on the scene" type of identification. Under these circumstances, the identification was not impermissibly suggestive. See *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Commonwealth v. Hall*, supra. (Concurring Opinion, Cercone, J.).

Since we have held the out-of-court identification was not impermissibly suggestive, it could not have tainted the identification at the preliminary hearing. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The

preliminary hearing, we will only consider that particular "in court" identification as preserved for our review. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975).

lower court properly denied appellant's motion to suppress this identification.[6]

## II.

In deciding whether the evidence was sufficient to prove the identity of appellant beyond a reasonable doubt, the test is whether all the evidence, direct and circumstantial, viewed in the light most favorable to the Commonwealth establishes that fact. See *Commonwealth v. Rose*, 483 Pa. 382, 400, 396 A.2d 1221, 1230 (1978). Appellant argues that the identification of appellant was "vague, tenuous, and uncertain." To the contrary, the opinion of the lower court specifically states that Mr. Miller's identification of appellant at the trial, which was not objected to, and the identification at the preliminary hearing were positive.[7] As has already been discussed in Part I, Mr. Miller had an adequate opportunity to view appellant while he was at the doorway and in his home, which provided a sufficient basis upon which to base the identification.

Throughout the trial, and now on appeal, appellant argued that he was not a participant in the crimes, but had been at home the evening in question. Appellant claims that his friends, Frank Johnson and Lamont Harris committed the robbery with another black male, Baby Charles. After the robbery, appellant contends that Johnson and Harris parted company with Baby Charles and visited appellant for a time. All three then decided to go out for a late snack which was

6. In any event, had we found the hospital confrontation impermissible, our conclusion would not change, because Mr. Miller's encounter with appellant in his home provided him a basis independent of the hospital confrontation upon which the in-court identification could have been made. *Commonwealth v. Tate*, 229 Pa.Super. 202, 323 A.2d 188 (1974).

7. As a matter of fact, the trial judge stated Mr. Miller's identification of appellant at the preliminary hearing was positive despite the fact that three persons testified that Mr. Miller identified appellant's brother-in-law rather than appellant. The likely reason this contradictory testimony was not believed was that the three men were appellant's lifelong friend and co-defendant who had already pleaded guilty, appellant's brother-in-law, and appellant himself.

when the police apprehended them. Appellant, who was carrying a large amount of cash when arrested, approximately one-third of the amount stolen, claims his friends never mentioned the robbery. However, this testimony of appellant and the same testimony elicited from Johnson seems hardly believable in light of the total record. Johnson's statements were only given after his own conviction, and he knew little about the "Baby Charles" who allegedly was the other person involved in the crime. Johnson was also appellant's life-long friend. We hold that the evidence in the record as a whole was sufficient to support the jury's finding on appellant's identity.

### III.

Finally, appellant claims his trial counsel was ineffective for failing to subpoena a witness who allegedly would have supported his alibi. Appellant's brief argues that in a letter dated October 4, 1977, appellant stated that his sister would have produced exculpatory evidence if she had been called as a witness at the time of the trial. This letter does not appear in the record before us nor is there any reference that appellant attempted to make it available to us. Additionally, appellant does not offer any facts that would show the nature of the exculpatory evidence. Appellant's trial occurred on March 17, 18 and 21, 1977 and there is no indication that trial counsel knew at that time that appellant's sister could have testified, although appellant's brief makes the argument on appeal.

From our independent review of the record, we conclude that this argument is meritless. Ineffectiveness of counsel may be found in cases where counsel fails to obtain the testimony of a known alibi witness whose testimony would cast a shadow on the Commonwealth's case. *Commonwealth v. Abney*, 465 Pa. 304, 350 A.2d 407 (1976); *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). However, in the instant case, appellant has not shown that his trial counsel knew of the alibi witness at the time of trial or that appellant's sister would have given exculpatory

evidence. Under these circumstances our courts have held that "this alleged error, absent a demonstration that the missing testimony would be helpful could not be equated with a conclusion of ineffective assistance." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 609–10, 235 A.2d 349, 355 (1967), citing *Commonwealth ex rel. Sprangle v. Maroney*, 423 Pa. 589, 225 A.2d 236 (1967); *Commonwealth v. Yarbough*, 248 Pa.Super. 356, 375 A.2d 135 (1977).

Based on the record in this case and the above-cited case law, we cannot conclude appellant's trial counsel was ineffective in this case.

Judgment of sentence affirmed.

HOFFMAN, J., concurs in the result.