## Commonwealth *v.* Ray, Appellant.

44

Argued January 17, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused March 6, 1974.

*Arthur E. Grim,* with him *William R. Bernhart,* and *Austin, Speicher, Boland, Connor & Giorgi,* for appellant.

*Grant E. Wesner,* Deputy District Attorney, with him *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, January 24, 1974:

John William Ray, the appellant, was convicted by a jury of attempted robbery, burglary, and conspiracy to commit both of those offenses. Post-trial motions were denied and appellant was sentenced to pay a fine of $200 and costs of the prosecution, and to serve a prison term of 2 to 4 years. On appeal, the Superior Court affirmed, per curiam, without opinion.

The Commonwealth's case rested principally upon the testimony of one Frank Kenton, the sole witness to the events which formed the basis of these convictions. In the prosecution's case-in-chief, Mr. Kenton described the events of the crime as well as the identification which he had made of the defendant 50 minutes after the crime occurred. This identification was challenged both in the trial court and on appeal on the ground that it violated the defendant's right to counsel under the Sixth Amendment of the Constitution of the United States. We granted allocatur limited to this issue, and now affirm the order of the Superior Court affirming the judgment of sentence.

The Commonwealth's evidence established that on June 13, 1968, at approximately 2:20 a.m., a gunman entered the well-lighted office of the Klein Motel in Berks County and demanded money. When the night clerk, Frank Kenton, denied having any money in his possession, the intruder began rifling the drawers behind the desk. Upon hearing Kenton call for help, the would-be robber took flight, pursued by the clerk. Kenton saw the man he was chasing enter the passenger side of a car parked 150 feet down the highway and drive away.

Mr. Kenton immediately reported the incident to the police, describing the intruder as a 22-23 year old male, with dark, bushy hair, wearing a tan jacket and dark trousers; the car was described as a 1957 or 1958 Plymouth. Soon thereafter, a 1957 Dodge car was stopped for speeding. As a passenger in the car appeared to meet the description of the Klein Motel intruder, the police got in touch with Kenton to see if he could make an identification. Kenton accompanied a police officer to a parking lot where the vehicle and its three occupants had been detained. Approaching the car, Kenton saw John Ray sitting on the passenger side of the front seat. He placed his hand on Ray's shoulder, stating to the police that this was the person who had attempted to rob the motel. As above stated, approximately 50 minutes had elapsed between the episode at the motel and the identification of Ray by Kenton at the parking lot.

Such was the evidence adduced at trial as to the pre-trial identification. It is appellant's position that the identification was constitutionally infirm because he was neither informed of his right to have counsel present, nor was he afforded a formal line-up. He argues, accordingly, that the testimony concerning the identification at the parking lot should have been excluded. In support of this proposition, appellant relies

upon the decisions of the United States Supreme Court in *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149 (1967), and *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178 (1967), as well as decisions in this Court and the Superior Court construing the principles laid down by those cases.

In *Wade* and *Gilbert,* decided by the Supreme Court on the same day, the Court announced for the first time that "a post-indictment pre-trial line-up at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a line-up without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the line-up". *Gilbert v. California, supra,* 388 U.S. at 272. In *Gilbert,* it was further held that where, as part of the prosecution's case at trial, testimony is given by state witnesses that they identified the defendant at an uncounselled pre-trial line-up, such testimony is subject to a per se exclusionary rule, requiring a new trial unless the error can be declared constitutionally harmless under *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705 (1967).

Although the language of the majority opinion in *Wade* is broad enough to encompass all pre-trial identification confrontations regardless of the procedural stage at which they occur, the fact is that in both *Wade* and *Gilbert* the confrontation was part of a formal line-up conducted for identification purposes a number of days *after* the suspect had been arrested and indicted and *after* counsel had been appointed to represent him. This procedural stage was deemed to be of importance in *Kirby v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411 (1972), where the United States Supreme Court refused to apply the *Wade-Gilbert* exclusionary rule to identification testimony based upon "a police station showup

that took place *before* the defendant had been indicted or otherwise formally charged with any criminal offense". 406 U.S. at 684.[1]

The right to counsel at a pre-trial confrontation, the *Kirby* Court held, does not attach until "after the initiation of adversary judicial proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment". 406 U.S. at 689. "For it is only then," said the Court, "that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." 406 U.S. at 690-91.[2] (Footnote omitted.)

---

[1] In *Kirby v. Illinois, supra,* the facts were as follows: the witness whose in-court testimony was challenged had been robbed by two men who took his wallet containing a social security card and some traveler's checks. The next day, a police officer, unaware of the robbery, arrested two persons who had been unable to explain their possession of another person's social security card and traveler's checks. Upon arriving at the police station, the officer learned of the robbery and sent for the victim, who identified both men immediately upon entering the police station. There was no lawyer present at this confrontation and neither suspect had been advised of a right to have one present.

[2] Even prior to the decision in *Kirby,* it had been generally held that there was no right to counsel at on-the-scene identifications. See *United States v. Sanchez,* 422 F. 2d 1198 (2d Cir. 1970); *Russell v. United States,* 408 F. 2d 1280 (D.C. Cir. 1969); *United States v. Davis,* 399 F. 2d 948 (2d Cir. 1968); *Commonwealth v. Hall,* 217 Pa. Superior Ct. 218, 226-28, 269 A. 2d 352 (1970). See, generally, N. Sobel, *Eye Witness Identification: Legal and Practical Problems,* §19 (1972); Note, *Pretrial Identification Procedures—Wade to Gilbert to Stovall—Lower Courts Bobble the Ball,* 55 Mich. L. Rev.

In the case at bar, as we have observed earlier, the defendant was detained because the automobile in which he was riding and his appearance coincided with those described by the victim of an attempted robbery which occurred within an hour of the stop. He had not been arraigned or otherwise charged with any crime, nor had any other formal criminal proceeding been brought against him. Indeed, he had not even been formally arrested, and thus was one step further removed from the commencement of adversary judicial proceedings than was the defendant in *Kirby*. Exactly when "adversary judicial proceedings" commence is not spelled out in the *Kirby* opinion. Presumably, this could vary from state to state, and perhaps even from case to case. The Pennsylvania Rules of Criminal Procedure indicate [Pa. R. Crim. P. 120(a)] that the decision to prosecute in this state is made as early as the preliminary hearing, which, of course, precedes an indictment.[3] However that may be, the parking lot encounter in the case at bar is so close to the situation in *Kirby* that we must conclude that appellant had no right, under the Sixth Amendment, to have counsel present at that time (or, by the same token, to have the identification postponed until a formal line-up could be conducted).[4] There is no need for us in this case, there-

---

779, 784 (1971) ; J. Quinn, *In the Wake of Wade: The Dimensions of the Eyewitness Identification Cases*, 42 U. Cal. L. Rev. 135, 144-45 (1970).

[3] It is arguable that the decision to prosecute occurs even earlier. See Pa. R. Crim. P. 102-106, and the dissenting opinion of Mr. Justice Brennan in *Kirby*, 406 U.S. at 698-99 (suggesting that at least an arrest is the point at which the right to counsel should attach: "An arrest evidences the belief of the police that the perpetrator of a crime has been caught" and that a post-arrest confrontation for identification is a "critical confrontation of the accused by the prosecution").

[4] The right to counsel in "all criminal prosecutions" is guaranteed by the Pennsylvania Constitution as well as that of the United

fore, to undertake to pinpoint more precisely the time of commencement of adversary criminal proceedings in Pennsylvania.

Nor does appellant's reliance upon *Commonwealth v. Whiting,* 439 Pa. 205, 266 A. 2d 738 (1970), require us to make this determination. *Whiting,* decided before the *Kirby* case, did not address itself to the question here under consideration. In that case we applied *Wade* both to a pre-trial photographic display[5] and to a one-to-one viewing of the defendant himself through a one-way mirror. We stressed the fact, however, that the defendant had already been arrested for the offense in question at the time these events occurred. In the case at bar, on the other hand, Ray had not been arrested but merely detained for immediate investigation. In this respect, the instant case and *Whiting* are sig-

States. Art. I, Sec. 9. Our delineation of the state right is not necessarily circumscribed by the interpretations given by the Supreme Court of the United States to the corresponding federal right. Cf. *Commonwealth v. Mills,* 447 Pa. 163, 172, 286 A. 2d 638. Substantially all of our cases in this field, however, have addressed themselves to the right to counsel under the federal constitution. This is true of all the appellate decisions on the right to counsel at a line-up or show-up; *Commonwealth v. Futch,* 447 Pa. 389, 396, 290 A. 2d 417 (1972) ; *Commonwealth v. Spencer,* 442 Pa. 328, 331, 275 A. 2d 299 (1971) ; *Commonwealth v. Whiting,* 439 Pa. 205, 208, 266 A. 2d 738 (1970) ; *Commonwealth v. Hodges,* 218 Pa. Superior Ct. 245, 247, 275 A. 2d 884 (1971) ; *Commonwealth v. Hall,* 217 Pa. Superior Ct. 218, 228, 269 A. 2d 352 (1970) ; *Commonwealth v. Whiting,* 216 Pa. Superior Ct. 92, 96, 259 A. 2d 176 (1970) ; *Commonwealth v. Lee,* 215 Pa. Superior Ct. 240, 243, 257 A. 2d 326 (1969). Whether Art. I, Sec. 9 of the Pennsylvania Constitution should be given a broader sweep than is given to the Sixth Amendment to the federal constitution has not been raised in this case, and we express no, opinion upon that question.

[5] The United States Supreme Court has since held that the right to counsel at pre-trial confrontations does not apply to the viewing of photographs. *United States v. Ash,* 413 U.S. 300, 37 L. Ed. 2d 619 (1973).

nificantly different. As above indicated, we leave to another occasion a determination of whether in Pennsylvania adversary judicial proceedings commence with a formal arrest or at some other point. Today we hold only that they do not commence at a pre-arrest confrontation of a suspect who has been detained for investigation shortly after commission of a crime.[6]

Appellant also relies upon two decisions of the Superior Court wherein the *Wade-Gilbert* rule was applied, both decided post-*Wade* but pre-*Kirby*: *Commonwealth v. Lee*, 215 Pa. Superior Ct. 240, 257 A. 2d 326 (1969)[7] and *Commonwealth v. Hall*, 217 Pa. Superior Ct. 218, 269 A. 2d 352 (1970). In both cases the contested confrontations took place shortly after commission of the crimes and, in *Lee*, before the suspect had been arrested.[8] In these respects, neither *Lee* nor *Hall* is distinguishable from the case at bar. To the extent,

---

[6] *Commonwealth v. Spencer*, 442 Pa. 328, 275 A. 2d 299 (1971), also relied upon by the appellant, is inapposite for the same reason as is *Whiting*. There we held that *Wade* applied to a police station line-up of a defendant who was already under arrest for the crime being investigated.

[7] In *Commonwealth v. Lee*, the confrontation was also held so impermissibly suggestive as to violate due process. 215 Pa. Superior Ct. at 244. Nothing we say today affects that holding.

[8] Although the opinion in *Commonwealth v. Hall* states that the defendant had been arrested before his pre-trial identification, the account of that arrest raises serious questions as to whether the defendant was apprehended on evidence sufficient to provide probable cause for his arrest under *Commonwealth v. Hicks*, 434 Pa. 153, 158-59, 253 A. 2d 276 (1969). The facts reported in *Hall* indicate that the identification occurred at the same stage as that of the present case; *i.e.*, at the preliminary phase of the investigation where, absent the identification, the police had not yet obtained sufficient evidence to make an arrest upon probable cause. If, however, the police in *Hall* did in fact have sufficient evidence to justify the arrest of the defendant, the case is inapposite for the reasons set forth in the discussion of *Commonwealth v. Whiting, supra*.

52

therefore, that they are inconsistent with our present decision with respect to a Sixth Amendment right to counsel, they must be disapproved.

The order of the Superior Court is affirmed.

Mr. Justice EAGEN and Mr. Justice O'BRIEN concur in the result.

Mr. Justice ROBERTS, Mr. Justice NIX and Mr. Justice MANDERINO dissent.