## Commonwealth *v.* Jenkins, Appellant.

524

Submitted June 18, 1974. Before Watkins, P. J., Jacobs, Hoffman, Cercone, Price, Van der Voort, and Spaeth, JJ.

*Paul Messing* and *John W. Packel*, Assistant Defenders, and *Vincent J. Ziccardi*, Defender, for appellant.

*David Richman, James T. Ranney, Mark Sendrow*, and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

Opinion by Spaeth, J., February 27, 1975:

Appellant was tried before Judge DiBona, sitting without a jury, and was found guilty of burglary[1] and placed on three years probation. On this appeal he contends that the admission of a pre-trial identification and of an in-court identification violated his constitutional rights.

---

1. Act of June 24, 1939, P.L. 872, 18 P.S. §3901.

At the suppression hearing Officer Birdsong testified as follows. On January 23, 1973, shortly after midnight, he and his partner were on routine patrol when they spotted two men climbing out of a service station through a broken window. They immediately pulled their car onto the station's parking lot and headed toward the window. Officer Birdsong came to within one to two and a half car lengths of the two men. The area was well-lit by street lamps and an overhead light in the station, and he observed one man, whom he later identified as appellant, full face. He chased appellant, and during the chase saw one side of appellant's face, and his partner chased the other man. Appellant escaped, but the other man was caught. He informed the officers that appellant, whom he identified by name and address, had been his confederate. The officers went at once to appellant's address, but appellant was not at home. Two hours later Officer Birdsong returned to appellant's home with a detective. This time appellant was at home, and Officer Birdsong identified and arrested him.

At the conclusion of this testimony, the court denied the motion to suppress the pre-trial identification and any in-court identification. The case proceeded immediately to trial, Officer Birdsong's testimony at the suppression hearing being incorporated into the trial record. The officer was called briefly to explain a discrepancy between that testimony and a report given to an investigating detective. The report indicated that the officer's partner, rather than he, had chased appellant. The officer, however, re-affirmed his testimony. Appellant was found guilty, post-trial motions in arrest of judgment or for a new trial were denied, and this appeal followed.

Appellant argues specifically that the pre-trial identification should have been suppressed because he was denied his right to counsel and because the procedure used was unduly suggestive, and that the in-court identi-

fication should have been suppressed as tainted by the pre-trial identification.

An accused has a right to counsel at any critical stage of prosecution. *United States v. Wade,* 388 U.S. 218 (1967) (post-indictment line-up held to be a critical stage). In addition, an identification is inadmissible when obtained by a procedure "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny an accused due process. *Stovall v. Denno,* 388 U.S. 293, 302 (1967). *See also United States v. Wade, supra; Gilbert v. California,* 388 U.S. 263 (1967). Finally, if a pre-trial identification is inadmissible, either because the accused was denied counsel or because of suggestiveness, an ensuing in-court identification is also inadmissible unless it can be shown to be based on a source independent of, and not tainted by, the pre-trial identification. *United States v. Wade, supra; Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971).

In order to effectuate these exclusionary rules, an accused is entitled to a pre-trial evidentiary hearing to determine the admissibility of the identifications. *Commonwealth v. McMillion,* 215 Pa. Superior Ct. 306, 265 A.2d 375 (1969) ; Pa. R. Crim. P. 323. First the hearing judge must determine whether the accused was entitled to counsel, and, if so, whether that right was recognized, and whether the identification procedure was impermissibly suggestive. *United States v. Wade, supra; Stovall v. Denno, supra.* Next the hearing judge must determine the admissibility of the in-court identification. *See generally* Belsky, Criminal Procedure in Pennsylvania, The Pre-Trial Issues in Four Parts, 78 Dick. L. Rev. 209 (1973).

I

Judge DiBona held that when appellant was identified at his home he had no right to counsel. In appraising this holding it is necessary to refer to both the Federal and State decisions.

It is possible to read *Wade* as encompassing all pre-trial identifications regardless of the procedural stage. However, in *Kirby v. Illinois,* 406 U.S. 682 (1972), the Court refused to apply the *Wade-Gilbert* exclusionary rule to a police station show-up that took place after the defendant had been arrested but before he had been indicted. It held that the right to counsel at a pre-trial confrontation does not attach until "after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 689. "For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified . . . It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Id.* at 689-90.

In *Commonwealth v. Ray,* 455 Pa. 43, 315 A.2d 634 (1974), the Pennsylvania Supreme Court held that the defendant had no right to counsel when he was identified shortly after the commission of the crime. There the defendant tried to rob a desk clerk in a motel. Failing, he fled. Police officers stopped his car because it matched the description broadcast on the police radio. The desk clerk was brought to where the car was detained and made a positive identification. The court said: "[T]he parking lot encounter . . . [was] so close to the situation in *Kirby* that we must conclude that appellant had no right, under the Sixth Amendment, to have counsel present at that time (or, by the same token, to have the identification postponed until a formal line-up could be conducted)." *Id.* at 49, 315 A.2d at 636. While noting that the defendant had not been formally arrested, and "thus was one step further removed from the commencement of the adversary judicial proceedings than was the defendant in *Kirby,*" *id.,* the court explicitly declined to decide when the right to counsel attaches in Pennsylvania.

*Id.* at 50, 315 A.2d at 637. The court did decide that question in *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974). There the court refused to confine itself to the limitations set forth in *Kirby.* "[T]he plurality in *Kirby* attaches some significance to the indictment, they specifically mention several benchmarks: 'formal charge, preliminary hearing, indictment, information, or arraignment.' 406 U.S. at 689, 92 S. Ct. at 1882. We are convinced that it would be artificial to attach conclusionary significance to the indictment in Pennsylvania. [Footnote omitted.] Rather, we hold that *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970), appropriately draws the line for determining the initiation of judicial proceedings in Pennsylvania at the arrest." *Id.* at 171, 320 A.2d at 353. *Cf. Commonwealth v. Harvey,* 231 Pa. Superior Ct. 86, 331 A.2d 915 (1975) (SPAETH, J., concurring). Accordingly, the court held that evidence of an uncounselled line-up conducted five hours after an arrest but before preliminary arraignment was inadmissible.

In the present case, appellant had not been arrested when Officer Birdsong identified him. It is evident that the arrest was conditioned on a positive identification. Thus, even under the rule established in *Richman,* which is broader than the Federal rule, appellant was not entitled to counsel. Further, as shown by *Ray,* neither was he entitled to have identification postponed until a formal line-up could be conducted.

## II

Judge DIBONA also held that the encounter at appellant's home was not impermissibly suggestive. The review of this holding must be especially strict because, as first discussed, the usual safeguard against suggestiveness, *i.e.,* the presence of counsel, was not required. It will be recalled that one of the men leaving the service station had been caught and had given Officer Birdsong and his partner officer appellant's name and address and had iden-

tified appellant as a confederate. Appellant argues that because of these facts Officer Birdsong's mind was so biased that he could not make an independent identification. Appellant submits that the proper procedure would have been to have a police officer other than Officer Birdsong go to his home, arrest him, and bring him to the police station for a formal line-up in front of Officer Birdsong.

The United States Supreme Court noted in *Wade* and *Stovall* that one-to-one confrontations between suspect and victim are highly suggestive and therefore viewed with strong disfavor. However, such confrontations are not *per se* inadmissible. Thus in *Stovall* the identification was held proper because the witness was in danger of imminent death and immediate confrontation was deemed necessary. In *Commonwealth v. White,* 447 Pa. 331, 290 A.2d 246 (1972), testimony of an accidental confrontation between the witness and the suspect was held to be admissible. The one-to-one identifications most commonly held admissible involve prompt on-the-scene identifications. *United States v. Davis,* 399 F.2d 948 (2d Cir. 1968), *cert. denied,* 393 U.S. 987 (1968), is an example. The defendant was arrested for walking on the New York Thruway in violation of the Vehicle and Traffic Law. The arresting officer had been suspicious of a car parked on the Thruway. While taking the defendant back to the police station, the officer stopped at a toll booth and asked the collector whether he had seen the defendant before. The collector identified the defendant as the driver of the car under suspicion. In admitting the collector's ensuing in-court identification, Judge FRIENDLY stated: "It is hard to believe the Court [in *Wade*] meant to prevent an officer from making such a routine, uncontrived inquiry and to require that the victim and the bystanders be carted off to a police station . . ." *Id.* at 951. *Russell v. United States,* 408 F.2d 1280 (D.C. Cir. 1969), *cert. denied,* 395 U.S. 928 (1969), is another example. A pri-

vate citizen reported the description of a suspicious person who had emerged from a store with a broken window. Responding to a radio broadcast, a squad car proceeded to the scene. En route, the officers spotted the defendant as he fled from an approaching car. They arrested him and took him to the store, where he was identified. Chief Judge BAZELON held this identification admissible, stating:

"Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain. Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty. There may also be unconscious or overt pressures on the witness to cooperate with the police by confirming their suspicions. And the viewer may have been emotionally unsettled by the experience of the fresh offense.

"Yet, on the other hand, recognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his 'mind's eye' a face or figure which he is hard put to describe adequately in words. Though the image of an 'unforgettable face' may occasionally linger without any translation into words, photographic recall is most often ephemeral . . .

"Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability . . .' This probability, together with the desirability of expeditious release of innocent suspects, presents 'substantial countervailing policy considera-

tions' which we are reluctant to assume the Supreme Court would reject. [Footnote omitted.]" *Id.* at 1284.

The holding in *Russell* was expressly limited to "on-the-scene identifications which occur within minutes of the witnessed crime." *Id.* at 1284, n.20. As Judge BAZELON noted, the closer the confrontation to the time of the crime, the greater the likelihood that the witness will correctly recall the image of the criminal. Also, the less the environment of the criminal episode is changed, the less the chance that extraneous factors will influence the identification. Here, since the identification was made two hours after the crime and at a different location, it cannot be considered an on-the-scene identification. Nevertheless, the policy considerations discussed in *Russell* seem applicable. The identification procedure was not the result of haphazard or tardy police investigation. When the police learned appellant's identity, they went at once to his home but found he was out. Only on their second trip could they confront him. Thus the identification was made at the earliest possible moment. The case is similar to *Commonwealth v. Ray, supra*. There the identification was made as soon as the suspect was apprehended, fifty minutes after the crime, away from the scene of the crime, and while the suspect was in the custody of the police. The Pennsylvania Supreme Court held the identification not unduly suggestive and admitted it.

The implicating statements made by the other suspect to Officer Birdsong and his partner officer were no doubt highly suggestive. As a police officer, however, Officer Birdsong was not the sort of witness referred to by Judge BAZELON as possibly subject to "pressures ... to co-operate with the police by confirming their suspicions." *Russell v. United States, supra* at 1284. In addition, other facts counter suggestiveness. The area was well-lit, Officer Birdsong came to within two and one-half car lengths of

the suspect and saw him full face, and as he chased him, saw the side of his face.

In addition, as mentioned in *Russell*, there is a distinct interest in expeditious release of innocent suspects. If Officer Birdsong had proved unable to identify appellant at his home, appellant would have been hardly disturbed. If, however, other police had gone to appellant's home, arrested appellant, and brought him back to the police station for a line-up, the intrusion would have been far more serious. Further, by having Officer Birdsong go to appellant's home the police put themselves in the position of being able to resume their search as quickly as possible in the event that appellant had proved innocent.

On balance, when all the facts are considered, it appears that the pre-trial identification was not so suggestive that appellant was denied due process of law. The in-court identification, in turn, was properly allowed.

Judgment of sentence is affirmed.