396 A.2d 755

**COMMONWEALTH of Pennsylvania**

v.

**Omar H. LEE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 30, 1977.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Denied May 16, 1979.

282

---

Benjamin Lerner, Defender, Philadelphia, for appellant.

F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellant was tried by a judge sitting with a jury and was convicted of robbery, rape, and involuntary deviate sexual intercourse.[1]  Post-verdict motions were denied and appellant was sentenced to three concurrent prison terms of eight to twenty years.  This appeal followed.

On the night of January 14, 1976, the complainant was walking to her home at 1208 Spruce Street in Philadelphia. Sometime after 11:15 p. m., as she neared the corner of 13th and Spruce Streets, she was grabbed from behind by a man wielding a sharp instrument.  He forced her into a nearby alley where she was compelled to partially disrobe and to submit to sexual intercourse and sodomy.  Before leaving her, the attacker stole $11 in bills and approximately $2.50 in change from her purse.  The entire incident, according to the complainant's testimony at trial, lasted about one half hour, during which time she observed her attacker's face and clothing and heard his voice.

After the attack, the complainant ran to a nearby store and asked that the police be called.  Officer John Russell arrived a few minutes later, at about 12:25 a. m.  The complainant told him that she had been raped and robbed by a "big, fat, Negro male, wearing a tan coat and very tall." (N.T.M.S. 23).  Officer Russell broadcast this information over the police radio.

Soon after receiving this broadcast report, Officers Dennis McNaulty and Edward Mazur saw appellant, a tall, fat, black male in a tan coat, walking west on the 1300 block of South Street, which is some three blocks from the corner of 13th and Spruce Streets.  The officers apprehended appellant, placed him in their patrol car, and took him back to the corner of 13th and Spruce Streets for an "on the scene" identification.

The complainant was seated in the rear seat of Officer Russell's patrol car.  When Officers McNaulty and Mazur

1.  The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. §§ 3701, 3121, 3123 respectively.

brought appellant to within ten feet of her, she exclaimed, "That's him." Evidence of the "on the scene" identification, and also of an in-court identification by the complainant, as admitted at the trial.

## I

Before the trial, appellant moved to suppress the "on the scene" identification for suggestiveness. The complainant did not appear at the hearing on the motion, on May 18, 1976, nor did she appear at the continuation of the hearing, on May 20.[2] The only testimony concerning the identification was police testimony that appellant was apprehended on the basis of the radio report, that he was taken to the corner of 13th and Spruce Streets, that the complainant identified him there, and that this identification took place no more than one half hour after the attack. (N.T.M.S. 17–31). Counsel for appellant argued to the hearing judge, and argues to us, that since the Commonwealth had not called the complainant it had failed to meet its burden of establishing that the "on the scene" identification was not overly suggestive, and had thereby also failed to show the reliability of any in-court identification as independent of the inadmissible "on the scene" identification.

## A

A pre-trial identification is inadmissible at trial when obtained in violation of the accused's right to counsel or when obtained by a procedure "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny the accused due process of law. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). *See United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). If a pre-trial identifica-

---

2. The reason that the hearing took place on two different days was the Commonwealth's indication that the complainant was unavailable on May 18 but would be available on May 20. On May 20, however, the Commonwealth did not call the complainant but chose instead to rest its case. (N.T.M.S. 2)

tion is inadmissible, a later in-court identification is also inadmissible unless shown to be based on a source independent of, and not tainted by, the pre-trial identification. *United States v. Wade, supra; Commonwealth v. Connolly,* 478 Pa. 117, 385 A.2d 1342 (1978); *Commonwealth v. Spencer,* 442 Pa. 328, 275 A.2d 299 (1971).

An accused is entitled to a pre-trial evidentiary hearing to determine the admissibility of the identifications. *Commonwealth v. Jenkins,* 232 Pa.Super. 523, 527, 335 A.2d 463, 464 (1975); *Commonwealth v. McMillon,* 215 Pa.Super. 306, 265 A.2d 375 (1969). In *Commonwealth v. Jenkins, supra,* this court described the duty of the judge at a hearing to suppress identifications:

> First the hearing judge must determine whether the accused was entitled to counsel, and, if so, whether that right was recognized, and whether the identification procedure was impermissibly suggestive. . . . Next the hearing judge must determine the admissibility of the in-court identification. *Commonwealth v. Jenkins, supra,* 232 Pa.Super. at 527, 335 A.2d at 465 (citations omitted).

Certain considerations are specially applicable to the decision whether an "on the scene" identification was impermissibly suggestive. Any such identification is to some extent suggestive, for it represents a one-on-one confrontation between the complainant and a person in police custody. It has nevertheless been held that evidence of the identification will be admitted if the identification procedure was not "unduly suggestive." *See Commonwealth v. Turner,* 454 Pa. 520, 314 A.2d 496 (1974); *Commonwealth v. Ray,* 455 Pa. 43, 315 A.2d 634 (1974); *Commonwealth v. Aaron,* 255 Pa.Super. 289, 386 A.2d 1006 (1978); *Commonwealth v. Perdie,* 249 Pa.Super. 406, 378 A.2d 359 (1978); *Commonwealth v. Santiago,* 229 Pa.Super. 74, 323 A.2d 826 (1974). The reasoning is that the reliable aspect of an "on the scene" identification may offset the suggestive aspect. This reliable aspect is that when an identification is made on the scene, shortly after the crime, the criminal's image may still be fresh in the victim's mind. Also, as a consideration of policy, if "on

the scene" identifications are upheld, the police are enabled to "effectuate the rapid release of a mistaken suspect and to resume the search for the actual offender." *Commonwealth v. Perdie, supra. See Commonwealth v. Turner, supra.*

When the accused challenges an identification, it is the Commonwealth's burden to prove that the identification procedure was not unduly suggestive. *Commonwealth v. Turner, supra; Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968); *Commonwealth v. Perdie, supra* ; Pa.R.Crim.P. 323(h). Here, the Commonwealth argues that it met this burden by only having the police describe the procedure. We cannot accept this argument. At a hearing on a motion to suppress an "on the scene" identification it is essential that the identifying witness testify.

In order to determine whether the suggestiveness of an "on the scene" identification is offset by its reliability, the suppression hearing judge must consider not only the procedure used by the police but also whether at the time of the crime the witness saw the criminal with sufficient clarity and for a sufficient length of time to have been able to make an identification. The best, if not the only source of this information is the witness. The hearing judge may also have to consider other facts peculiarly within the knowledge of the witness, as for example whether the witness for some reason felt pressured into making the identification, how the witness perceived the identification procedure, and what was the witness' physical and mental condition. Thus, by failing to produce the witness, the Commonwealth deprives the hearing judge of essential information. Moreover, the failure to produce the witness deprives the defendant of an opportunity to test the identification by cross-examination. The witness' response to cross-examination may be essential to the hearing judge in deciding what identification procedure the police adopted, how the procedure affected the witness, and also what was the witness' opportunity and ability to make an identification. After seeing the witness under cross-examination, the judge may decide that the

witness could not make a reliable identification, or that the witness was in fact convinced that the defendant was the criminal only because the police presented him. With respect to photographic identifications this court has required that the actual array be displayed at the suppression hearing, "so that the defense would at least be in a position to *attack the credibility of the identifying witness testimony.*" *Commonwealth v. Jackson*, 227 Pa.Super. 1, 10, 323 A.2d 799, 804 (1974) (emphasis added). *See also Commonwealth v. Hodge*, 246 Pa.Super. 71, 369 A.2d 815 (1977) (Commonwealth's failure to produce photographs at suppression hearing makes photographic identification inadmissible). We have also found error where the hearing judge limited the defendant's right to cross-examine the identifying witness concerning the reliability of the identification. *See Commonwealth v. Alvin*, 257 Pa.Super. 290, 390 A.2d 827 (1978). *See also Commonwealth v. Rodriquez*, 234 Pa.Super. 294, 338 A.2d 633 (1975) (witness' identification in prior hearing inadmissible where defense counsel limited in cross-examining witness at prior hearing).

The essential nature of information regarding the complainant's opportunity to observe her attacker has often been indicated by the cases. Thus, in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court of the United States stated that "reliability is the linchpin in determining the admissibility of identification testimony." 432 U.S. at 114, 97 S.Ct. at 2253. The factors to be considered in deciding reliability, according to the Court, included "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id., citing, Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In *Commonwealth v. Turner, supra,* the Pennsylvania Supreme Court, in holding an "on the scene" identification admissible, cited the fact that the witness "had seen the robbers face to face only minutes earlier." In

*Commonwealth v. Aaron, supra*, this court held the identification admissible where the witnesses testified at the suppression hearing that they identified the defendant by his face and that they had had an excellent opportunity to observe the defendant before the incident. In *Commonwealth v. Perdie, supra*, this court held the identification admissible because the victim had an ample opportunity to see the defendant during the robbery. In *Commonwealth v. Dickerson, supra*, this court held the identification admissible despite the suggestive fact that the defendant was in handcuffs because the witness had observed the defendant under a street light during the crime.

Here, the Commonwealth's failure to have the complainant testify, not only concerning her observation of her attacker, but also concerning her own view of the identification procedure, left the hearing judge without evidence essential to the issue of admissibility. Accordingly, the Commonwealth failed to meet its burden of proof.

## B

Given the Commonwealth's failure to meet its burden of proof, the hearing judge erred in denying appellant's motion to suppress the prior identification. We are therefore presented with the choice either of ordering a new suppression hearing and new trial, or of determining for ourselves, without another hearing, whether the identification was reliable. We choose to do the latter.

In deciding whether the identification was reliable, we do not limit our review to the record of the suppression hearing, for "[[a]n] appellate court should be able to consider all the testimony on record to determine whether certain evidence was constitutionally admissible at trial, not just the testimony at the suppression hearing." *Commonwealth v. Kaschik*, 235 Pa.Super. 388, 396 n. 7, 344 A.2d 519, 520 (1975). After considering all the testimony, in particular the complainant's testimony at trial, we have concluded that both her "on the scene" and her in-court identifications of appellant were reliable. She testified that she spent approxi-

mately half an hour in appellant's presence during the crime, and that during this period she saw his face and clothing and heard his voice. There is little doubt that she was attentive, since she was the victim. She also testified that upon seeing appellant and hearing his voice, when the police brought him to her, she exclaimed, "That's him," and that this identification was not prompted by the police. The description she gave to the police was accurate, although not very detailed, and the time between the crime and the confrontation was no more than half an hour. Appellant's counsel cross-examined the complainant concerning these matters and her testimony was unshaken. The jury showed by its verdict that it accepted her testimony. Had she appeared at the suppression hearing and given the same testimony, the motion to suppress would have been justifiably denied.

A cautionary comment should be added. Our decision here to decide the admissibility of the identification on the basis of a review of the entire record should not be understood as meaning that we shall undertake such a review in another case. Whether such a review is appropriate must depend upon the particular facts, which is to say, the nature of the issues and whether the testimony enables those issues to be resolved by an appellate court. It is the duty of the suppression hearing judge to decide the admissibility of an identification in the first instance; it is not the duty of the trial judge or of the appellate court. In deciding admissibility, the hearing judge must hear the testimony of the identifying witness; if the Commonwealth fails to produce the witness, the identification should be suppressed.

## II

■ On the day of trial appellant objected to having a jury trial and, citing Pa.R.Crim.P. 1101, demanded to be permitted to waive his right to a jury and to elect to be tried by a judge without a jury. The trial judge commented that "[f]rankly I am somewhat reluctant to hear a rape case non-jury . . . I won't say that I won't but I am somewhat reluctant to do it." (N.T. 15) After an unsuc-

cessful attempt to obtain another judge to hear the case non-jury, the trial judge informed appellant's counsel that if appellant "is willing to waive before me I will take it . . . [i]f he is not willing to waive before me it will be heard by a jury." (N.T. 22) After a discussion with appellant, appellant's counsel stated that appellant still insisted that his case be heard by a judge without a jury but by another judge. The trial judge then ordered that the case be heard with a jury.

Rule 1101 provides that "the defendant may waive a jury trial with the consent of his attorney, if any, and approval by the judge of the court in which the case is pending, and elect to be tried by a judge without a jury." Pa.R.Crim.P. 1101. "It is well established that there is no constitutional prohibition to a court's denial in appropriate circumstances, of a defendant's request to be tried by a judge sitting without a jury." *Commonwealth v. Garrison*, 242 Pa.Super. 509, 515, 364 A.2d 388, 390 (1976). Moreover, Rule 1101 "expressly provides the trial judge with discretion in accepting a criminal defendant's waiver of jury trial." *Commonwealth v. Garrison, supra*. Here, the trial judge did offer to hear appellant's case without a jury; it was only after appellant refused this offer and requested another judge that a jury trial was ordered. It appears to us that appellant was "judge shopping." *See Commonwealth v. Garrison, supra*.

Appellant argues that he was not judge shopping but was acting on the basis of the fact that he could not receive a fair trial if the judge in question heard the case without a jury. In support of this argument appellant cites the judge's admitted reluctance to hear a rape case without a jury, and the fact that the judge had sat at the suppression hearing. The judge's offer to hear the case without a jury was thus, according to appellant, no choice at all.

The fact that the judge admitted reluctance to hear a rape case without a jury does not necessarily support a finding that appellant could not receive a fair non-jury trial from the judge; the judge's statement may be understood as

indicative of a concern that appellant's right to a jury trial should not be lightly waived where the charge is so serious a one as rape.

With respect to appellant's second argument: The Supreme Court has said that a trial judge should recuse himself from sitting without a jury where "prejudicial information is received in a pre-trial proceeding that would otherwise be inadmissible during the trial of the cause." *Commonwealth v. Goodman*, 454 Pa. 358, 361–62, 311 A.2d 652, 654 (1973). However, the Court has refused to hold improper a situation where the trial judge had also sat as the judge at the defendant's earlier hearing concerning the voluntariness of his confession. *Commonwealth v. Green*, 464 Pa. 557, 347 A.2d 682 (1975). This past term the Court again addressed the general issue, in the context of a Post Conviction Hearing Act proceeding. *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978). The Court held trial counsel ineffective for not requesting the trial judge to recuse himself where the judge knew that the defendant had earlier pleaded guilty to the charge. In *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238 (1975), this court held that a mistrial should have been declared when the trial judge learned that the defendant had pleaded guilty during the course of the trial. It appears from these cases that the crucial consideration is the type of evidence that the judge hears; if the evidence is inadmissible and is of a highly prejudicial nature, the judge should recuse himself or declare a mistrial if it is too late for recusal. *See Commonwealth v. Badger, supra; Commonwealth v. Conti, supra.* A guilty plea is by its nature so prejudicial that recusal is required. *See Commonwealth v. Badger, supra.* If the evidence is admissible or not of a highly prejudicial nature, recusal is not required. Here, there was no evidence at the suppression hearing that was inadmissible at trial; the only questionable evidence was the prior identification, which we have discussed above, and have held admissible. Thus no reason appears indicating that the trial judge erred in not recusing himself, when he offered to hear the case without a jury.

Since we find appellant's objections to trial by the judge meritless we hold that the judge did not abuse his discretion in ordering a jury trial. Appellant was afforded his rights under Rule 1101; he himself refused the opportunity to have his case heard by the judge sitting without a jury.

### III

Officer McNaulty testified at trial that when he apprehended appellant, he noticed that appellant was sweating and had a strong body odor. This supported the complainant's testimony that her attacker had a strong body odor. When appellant's counsel cross-examined the officer concerning the reason he had not mentioned body odor at the suppression hearing, the Commonwealth's objection was sustained. After a conference at side-bar, the trial judge, at the Commonwealth's request, instructed the jury as follows:

"The Court: Ladies and Gentlemen of the Jury, there has been a discussion before you between counsel in connection with the interrogation and the cross examination of this witness concerning the alleged body odor of the defendant at the time he was stopped on South Street, in the 1300 Block of South Street and as this had been brought out in a prior hearing. There was a prior hearing for a totally different purpose having nothing to do with guilt or innocence and was the subject of probable cause to arrest the defendant which was not before you in that proceeding. You have a different proceeding before you which is the question of guilt or innocence and therefore that particular evidence had nothing to do, that is whether or not the defendant had an alleged body odor or not had nothing to do with the purpose of the other hearing." N.T. 43.

Appellant argues that the trial judge erred in limiting his cross-examination; he also argues that the judge's instruction to the jury was error.

■■ The extent of cross-examination is within the discretion of the trial judge, who will not be reversed except for a clear abuse of discretion or error of law. *Common-*

*wealth v. Greene,* 469 Pa. 399, 404, 366 A.2d 234, 236 (1976); *Commonwealth v. Bailey,* 450 Pa. 201, 207, 299 A.2d 298, 301 (1973). Notwithstanding that the right to "cross-examination is encompassed by the accused's right of confrontation in a criminal case, as protected by the Sixth Amendment, 'the extent of cross-examination is within the discretion of the trial court.'" *Commonwealth v. Greene, supra, quoting United States v. Riccobene,* 320 F.Supp. 196, 200 (E.D.Pa. 1970), *aff'd,* 451 F.2d 586 (3d Cir. 1971). In determining the extent of cross-examination the trial judge may consider whether the matter is collateral, whether the cross-examination would be likely to confuse or mislead the jury, and whether it would waste time. *See Commonwealth v. Greene, supra* (collateral); *Commonwealth v. Donnelly,* 233 Pa.Super. 396, 336 A.2d 632 (1976) (waste of time); *Lafferty v. School Dist. of Phila.,* 27 Pa.Cmwlth. 80, 365 A.2d 1322 (1976) (cross examination was "getting off of the issue").

Here, the trial judge limited appellant's cross-examination only with respect to his attempt to impeach Officer McNaulty by contrasting the officer's testimony at the suppression hearing with his testimony at trial. Appellant's pursuit of this line of examination might have confused or misled the jury, for it brought into issue a former hearing about which the jury knew nothing, and implied an inconsistency in the officer's testimony when there was none. The issue at the suppression hearing was the description that Officer McNaulty received over the police radio, that description being the basis of his apprehending the appellant. The officer's trial testimony about appellant's body odor was in answer to the question of what he himself had noticed about appellant, not what the police radio description had told him about the suspect. It is thus apparent that the trial judge's limitation on cross-examination and his instruction concerning the difference between the suppression hearing and the trial did not constitute an abuse of discretion.

Affirmed.

JACOBS, President Judge, concurs in the result.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.