## Commonwealth v. Dekeyser

 

*Bruce Sagel,* for the Commonwealth.
*Donald Joel,* for defendant.

KLEIN, *R. B., J.,* May 11, 1981—Defendant, Curtis Dekeyser, was convicted by a jury of rape and burglary for an assault upon a woman who lived in another apartment in the building where Dekeyser was staying.

Briefly stated, the evidence presented was that on September 28, 1977, at about 4:30 am, complainant was awakened from her sleep and raped by a man who then exited from her rear fire escape door on the fourth floor. The police arrived to discover that the rear door had been jimmied open. When they went out the door and down the fire escape stairs, they noticed that there were cobwebs or spiderwebs stretched across the stairway going from the third floor down. They concluded that the person who exited complainant's apartment must still be in the building. The first two men the police brought to complainant were not identified, but when Dekeyser, who was found in a third floor apartment, was taken upstairs, complainant positively identified him. The police found clothing matching that described by complainant as being worn by her assailant in the apartment where they found Dekeyser, including a horseshoe shaped belt buckle and a screw driver.

Trial counsel raised five grounds for appeal, and new counsel entered the case and added a sixth ground (an allegation of ineffectiveness of counsel) before post-verdict motions were argued.

The reasons for the request for a new trial or in arrest of judgment are as follows:

1. The motion to suppress identification was improperly denied.

2. An objection to a defense question regarding characteristics of the attacker was improperly sustained.

3. Prosecutorial misconduct occurred when the district attorney made improper references dealing with the credibility of the complainant.

4. The court erred in using "restrain" rather than "hesitate" in the reasonable doubt definition.

5. The court improperly failed to give a "Kloiber" charge regarding identification.

6. There was ineffectiveness of counsel in (a) failing to call defendant's girl friend in the motion to suppress, and (b) failing to object to the fact that complainant was not called to the stand during the motion to suppress.

The arguments will be considered seriatim.

1. The Denial of the Motion to Suppress Identification.

This aspect of the alleged error was neither briefed nor argued by new counsel, and therefore can be considered waived: Com. v. Clair, 458 Pa. 418, 326 A. 2d 272 (1974).

It seems apparent that this identification procedure should qualify as a prompt, on-the-scene identification. Once the officers saw the intact webbing on the fire escape landing, they reasonably concluded the rapist did not go below the third floor. There were only three other apartments with access to the fire escape, two on the third floor and another

on the fourth. The complainant said her attacker was a tall, slender, dark-skinned Negro, a description fitting Dekeyser. After she failed to identify another man from one of the apartments opening to the fire escape, the police brought up Dekeyser. Complainant heard him talking and identified his voice, then identified him when she saw him. The police work was not improper but rather quick, effective and fair. Thus there was no error, which probably is why counsel waived this argument. See Com. v. Ray, 455 Pa. 43, 315 A. 2d 634 (1974).

2. The Sustaining of an Objection to Defense's Question Regarding Characteristics of the Attacker.

This argument was also not pursued by new counsel and should be considered waived.

A review of the record reveals that the line of questioning was not precluded by the court, and the objections made either misinterpreted the testimony of complainant or had previously been asked and answered.

Complainant described her attacker as to height, skin and eye color, haircut and voice. When asked whether these were the basis of her identification, she said:

"Just the way, his whole, even to the way he had stood and everything, from the time that the man stood in the front of my bed, when he was in the bedroom, his build, everything, it fit just the way I saw him in the bedroom."

Complainant indicated that nothing else particularly stuck out in her mind, but when the man was brought upstairs, everything seemed to fit together. The further questions of defense counsel merely went over this ground again. The witness had indicated, in response to defense questioning, that there was nothing else memorable about de-

fendant, but she knew it was the same person when she saw him again. There was no error in precluding repetition by defense counsel, which one assumes was why this argument was not pursued.

3. Claims of Prosecutorial Misconduct in References to the Complainant's Credibility.

There were two claims of alleged prosecutorial misconduct pursued by new counsel in his memorandum and oral argument. They were the following.

First, an objection was overruled to the following question and answer:

MR. RENFROE: . . . Now, ladies and gentlemen, this was not one of your knock out, drag out rapes where somebody was pulled off the street. Did Miss Monroe have to be stabbed, cut to death for you to believe her?

MR. McFADDEN: Objection, Your Honor.

THE COURT: Overruled.

MR. RENFROE: It's not that kind of case. It wasn't the kind of case where you would be on the edge of your chairs saying, oh, that poor lady. No, it wasn't that kind of case. It was a very dull case, but still a very serious case. The question is, would you believe that a person on the third floor would go up to the fourth floor and rape somebody?

• • •

Defendant claims that these remarks called for the jurors to vent their sympathy for the victim, and cited Com. v. Harvell, 458 Pa. 406 (1974). The instant case presents a situation opposite that in Harvell. In Harvell, the prosecutor said how terrible the crime was and how evil was the killer, and this was considered to have inflamed the passions of the jury. In this case, the prosecutor merely pointed out

that although there were no injuries and no weapon used and the case did not comport with the standard rape as depicted on television and in the media, that did not mean the jury should disbelieve the complainant. This is proper argument that does not appeal to the jury's passions, but rather cautions them to carry out their sworn duty, and the objection was properly overruled.

The second complaint was to the following line of questioning:

MR. RENFROE: It is a question of credibility. Direct evidence and circumstantial evidence. What did she say? "I was in my bed. I had been working all day." This is a hard working lady in Nicetown who said she was working all day, not on D.P.A., but working all day long.

MR. McFADDEN: Your Honor, objection.

THE COURT: I think that's not relevant.

MR. RENFROE: She was working all day. She came home—

MR. McFADDEN: Judge, objection, may I see you at sidebar?

THE COURT: Is it customary to interrupt every two seconds?

MR. McFADDEN: I'm sorry.

THE COURT: Save it to the end and you can do that.

• • •

Defense's objection at this point is ill-taken for two reasons. When defense counsel was given the opportunity to make his objections to the Commonwealth's closing (after it was over rather than interrupting at every minor point), he did not renew this objection, therefore waiving any claim. Furthermore, the jury was told the fact that the woman was working and not on D.P.A. was irrelevant, and

it was not improper for the prosecutor to give the chronology by repeating complainant's testimony that she was asleep after coming home from work when the rapist entered her bedroom. This is not an appeal to passion but merely setting the stage for what happened. The objection was properly overruled.

4. The "Restrain" Reasonable Doubt Charge.

Defendant does not and cannot contend that the definition of reasonable doubt as one that "would restrain a reasonable man or woman before acting in a matter of importance to himself or herself" has not been approved literally hundreds of times by our appellate courts.

The state of the Pennsylvania law is clear. The Supreme Court has never required a single standard charge on reasonable doubt: Com. v. Williams, 432 Pa. 557, 248 A. 2d 301 (1968). There is a long line of cases approving the charge given by the court in the instant case (defined as "a standard and approved form of charge" in Com. v. Donough, 377 Pa. 46, 103 A. 2d 694 (1954)). There is another long line of cases approving what the court in Com. v. Kluska, 333 Pa. 65, 3 A. 2d 398 (1939), held to be another "standard and approved form of charge," namely, a doubt that would cause one "to hesitate to act in any of the *important* affairs of their own lives."

In essence, defendant is arguing that Pennsylvania law has been declared unconstitutional by the Third Circuit in United States ex rel. Matthews v. Johnson, 503 F. 2d 339, 344-345 (3d Cir. 1974). Essentially, the Third Circuit held that it was a deprivation of due process to allow some judges in some murder cases to grant a defendant's request for a charge on voluntary manslaughter and other judges in similar cases to deny a request for such a

charge. This was considered arbitrary action, giving too much power to the individual judge.

The analogy is drawn to the instant circumstances by saying that the "restrain" charge is so different from the "hesitate" charge that defendants have different rights depending on which charge the particular judge uses, and this violates due process.

The jury's verdict in this case should not be upset for this ground for a number of reasons.

First, any change in such long-standing law should be made prospective in application only. Perhaps either through rule or decision the Supreme Court should narrow the definition of reasonable doubt, but chaos results if stare decisis is totally ignored and the rules are changed after the game is played, affecting literally hundreds of cases.

Secondly, judges should be given some latitude in language in the interest of having the jurors understand what they are saying. Different judges have different ways of speaking, and are comfortable using different language. Reading a standard charge from cover to cover is the surest way to put jurors to sleep or to totally confuse them. It is hard enough to have laymen understand complex points of law without needlessly restricting the ability of a judge to talk to them rather than just reading "legalese" to them. See Charrow, Robert and Veda, "Making Legal Language Understandable," Columbia Law Review, November, 1979.

Thirdly, if "hesitate" is defined properly, it *does* mean the same thing as "restrain." Webster's Third New International Dictionary (1968 Edition) defines restrain as "to hold (as a person) back from some action, procedure or course . . . " The *first* definition of hesitate is "to hold back in doubt or indecision." These are almost identical, and best define reasonable doubt. That is what happens in

the standard example given by counsel of a person about to buy a house who sees stains on the ceiling and then holds back from going through with the purchase unless the stain is explained, since he does not want to risk the expense of installing a new roof.

Fourthly, if either definition should be upset, "hesitate" should go and "restrain" should stay. It is the second definition of "hesitate" that causes trouble. That is "to delay momentarily: pause . . . " A person delays momentarily or pauses every time he goes to cross a street—a mere pause is not enough to require a not guilty verdict. In fact, in any serious matter a person should not act precipitously but should pause and delay momentarily to consider everything. If then he is not held back, he has no reasonable doubt. It is the "holding back" that is common to the first definition of hesitate and the definition of restrain that makes those words synonymous. Properly understood, hesitate conveys the same meaning as restrain. It is only if the jury makes a mistake and uses the second definition of "hesitate," a mere pause, that problems arise. If the court is going to make a change in an excess of caution, "hesitate" should be eliminated as an approved charge rather than "restrain."

Therefore, the use of the word "restrain" in a charge is proper.

5. The Propriety of the Court's Identification Charge.

There was a disputed issue of fact as to the opportunity of the complainant to view her attacker. Therefore, the court gave both prongs of the Kloiber charge (from Com. v. Kloiber, 378 Pa. 412, 424, _____ A. 2d _____, (1954)). The jury was told that if they believed complainant had a limited opportunity to observe defendant, they had to consider the

testimony with great caution and would need to have support from other evidence before they could accept it as being accurate. That would only be if the opportunity to observe was weak and insufficient. The jury was also instructed as follows on the identification testimony:

"However, a mistake can be made in identifying a person, even by a witness attempting to be truthful. Now, the thing you have to judge is whether the testimony of the identification witness was generally believable, whether her opportunity to observe was sufficient to allow her to make an accurate identification, how the identification was arrived at, whether or not the identification testimony is supported by other evidence in the case."

In Kloiber, the Supreme Court also pointed out that if a witness was not positive in his statements, or the statements are weakened by qualification or by failure to identify the defendant on one or more prior occasions, then the witness' identification testimony should also be taken with caution.

In this case, the witness identified the defendant as soon as he came into her apartment with the police, and never thereafter failed to identify him as her assailant. Defendant's objection to the identification charge is therefore without merit. According to defendant, he said that he had seen complainant around the building and once went to her apartment because he lost his key and gained access to his apartment through hers. She said that she did not remember seeing Dekeyser before. In other words, defendant claims he is entitled to a charge that the testimony on identification must be taken with caution and the jury need have other evidence to convict because complainant did not remember having seen defendant around the apartment building before. Leaving aside the fact that

this testimony of defendant might not be believed by the trier of fact, this position misinterprets Kloiber. There is no reason a woman should remember someone she casually sees around her apartment building. He has not raped her at this point, and there is nothing special that would make him stand out in her mind. If after the incident, when the identity of the attacker becomes critical, she would have identified someone else as her attacker or failed to pick out Dekeyser, then this part of the Kloiber charge would have been mandated. But there is no evidence of unreliability of the identification merely because the complainant did not remember chance encounters with one of her fellow tenants.

There was no error in giving the second prong of the Kloiber charge.

6. The alleged ineffectiveness of counsel in failing to call the girl friend or objecting to the failure to call the complainant at the motion to suppress.

In a supplemental motion for a new trial, defendant, through new counsel, claimed that trial counsel was ineffective in his failure to call defendant's girl friend as a witness at the motion to suppress. Mr. Dekeyser's girl friend, Darlene Lloyd, testified at trial but did not testify at the motion to suppress.

From a review of the record, it can be seen that there were strategic reasons for not calling Ms. Lloyd at the motion. She was a key witness for the defense, as she testified that she was in bed with defendant that night. Her testimony would certainly have more credibility than that of defendant himself. Therefore, a defense counsel well could have desired to have her testimony "fresh" at the trial and avoid any possibility of having contradictions between her motion testimony and her trial testimony to be

explored on cross examination by the district attorney. Moreover, the possession of jeans and a large belt buckle is not so unique that it adds much to the trial. Any criticism of trial counsel for this strategic step seems to be Monday morning quarterbacking. It certainly does not rise to the level of having no reasonable basis and being ineffective. See Com. ex rel. Washington v. Maroney, 427 Pa. 599, 235 A. 2d 349 (1967); Com. v. Musi, 486 Pa. 102, 404 A. 2d 378 (1979); Com. v. Hosack, 485 Pa. 128, 401 A. 2d 327 (1979).

Even were counsel correct that there were no strategic reason for the failure to call Ms. Lloyd, the remedy would not be a new trial. All the defendant would be entitled to would be a remand for a hearing in which Ms. Lloyd's testimony would be taken, and a determination as to whether or not this testimony would have affected the factual determination that the search was consensual. See Jackson v. Denno, 378 U.S. 368 (1964). In any event, the record is devoid of any evidence that Ms. Lloyd would testify that no consent was given to the search. All we have is defense counsel's bald assertion, unsupported by an affidavit. Counsel must provide a record to support his assertion: Com. v. Musi, supra.

Although not raised in a written post-verdict motion, and therefore waived, counsel did at argument raise the issue that complainant was not called at the motion to suppress. It is true that in dicta in Com. v. Lee, 262 Pa. Super., 280, 396 A. 2d 755 (1978), the Superior Court indicated that the Commonwealth must call the complainant at the motion to suppress identification to meet its burden of proof that an identification was not suggestive. However, this part of the Lee case is dicta and has not been followed. The Lee court indicated that the failure to present complainant would present the court with

the choice of ordering a new suppression hearing (and possibly a new trial if the suppression were granted at the new hearing), or determining on the record whether the identification was reliable. There is no question from the record of the motion and the record of complainant's testimony at the trial in chief that if believed, the testimony of the officers and complainant would be sufficient to meet the Commonwealth's burden that the identification was not suggestive. Thus a review of the record shows that the Commonwealth's position on the motion was stronger rather than weaker with the addition of complainant's testimony. Therefore, this issue is without merit. Moreover, complainant was available to the defense to call as of cross in the motion if he so desired.

Defendant never objected to the failure to call complainant at the motion, and therefore should be considered to have waived this issue. From a review of the testimony at the trial, it certainly was not ineffective to make that objection at a time when she could have been called. Her testimony was strong and supported the Commonwealth's position that the identification procedure was proper. Counsel should not be permitted to remain silent when the witness could have been called. There certainly were strategic reasons for not calling complainant. This could not be called ineffectiveness.

Further, the Omar Lee case was decided December 29, 1978, several months after the suppression hearing. Because it deviates from prior practice, to the extent it is applicable to the instant case it should not be applied retroactively.

* * *

Therefore, the motions to suppress were properly

denied, the trial was free from error, and counsel was not ineffective. Accordingly, defendant's post-trial motions were properly denied.